UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN DOE,<br><br>       Plaintiff,<br><br>   v.<br><br>THE CITY UNIVERSITY OF NEW YORK,<br>KAROL V. MASON, BRIAN A. KERR,<br>TONY BALKISSOON, JILL MAXWELL,<br>and JANE DOES 1-10, individuals whose<br>names are currently unknown to Plaintiff,<br><br>       Defendants. | Civil Action No.<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff JOHN DOE, who proceeds pseudonymously for the reasons set forth below, by and through his undersigned counsel, as and for his Verified Complaint against the above-named Defendants, hereby states and avers as follows:

## INTRODUCTION

1. Plaintiff, a full-time student enrolled for the current Fall 2021 term at John Jay College of Criminal Justice, a senior college of the City University of New York ("CUNY"), brings this action to protect and vindicate his fundamental constitutional and statutory rights, including those under the First and Fourteenth Amendments to the United States Constitution, the New York State Constitution, the New York State Human Rights Law and the New York City Human Rights Law, which defendants by their acts, policies, practices and procedures have deprived Plaintiff.

2. Defendants have unjustly discriminated against plaintiff, a fully enrolled student, by failing and refusing to accommodate his sincerely held religious beliefs, involuntarily withdrawing him from classes in which he is enrolled and refusing to allow him to attend classes in which he is enrolled on Defendants' campus in New York City.

3.     Specifically, Defendants have promulgated, implemented and enforced a student vaccine mandate policy, which professes to include the provision of accommodations for any student's sincerely held religious beliefs, but in practice Defendants have failed and refused to accommodate Plaintiff's sincerely held religious beliefs and have discriminated against him based on such beliefs in violation of his federal and state constitutional and statutory rights.

4.     Moreover, in failing and refusing to accommodate Plaintiff's sincerely held religious beliefs, Defendants have acted contrary to the express terms of their own policies by numerous acts, including but not limited to refusing to evaluate Plaintiff's accommodation request in good faith, refusing to explain the refusal to grant an accommodation, refusing to engage in an interactive dialogue with Plaintiff regarding his request, and refusing to permit or allow an appeal from his pro-forma denial of any accommodation. By such conduct, Defendants have denied Plaintiff his rights to procedural due process.

5.     As set forth in this Complaint, the policies, practices and procedures of Defendants were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

6.     In this action, Plaintiff seeks to enjoin the unconstitutional application of Defendants' policies, practices and procedures as set forth in this Complaint, by a temporary restraining order, preliminary injunction and permanent injunction, and declaratory relief, as well as compensatory and punitive damages, fees and costs.

## BASIS FOR PROCEEDING PSEUDONYMOUSLY

7.     Plaintiff is a freshman student in his first academic term at John Jay College of Criminal Justice.  Virtually all of the acts that form the bases for the claims in this action occurred when Plaintiff was a 17-year-old minor, including Defendants' promulgation, activation

and enforcement of the student vaccine policy, Plaintiff's request for a religious exception from such policy, Defendants' denial of Plaintiff's request, and Defendants' refusals to provide Plaintiff with the reason for the denial, or to engage in an interactive dialogue with Plaintiff, or to permit Plaintiff to appeal the denial of a religious accommodation, all in violation of Defendants' published policies. In accordance with CUNY's policies, because Plaintiff was a minor, his father was required to co-sign Plaintiff's exception request, attesting to its accuracy.

8.      Plaintiff's vaccination status and request for a religious exception are highly personal religious and medical decisions. CUNY's student vaccine policy and published guidance require students' requests for religious exceptions to be submitted to and vaccination records to be held by the Campus Location Vaccine Authority ("LVA"). The student vaccine policy expressly states that the LVA's records are considered "confidential health records" for purposes of CUNY's privacy policies. Plaintiff submitted his exception request to Defendants with the understanding that it would be maintained as a confidential health record.

9.      Given the climate of fear and loathing created by state and city officials regarding unvaccinated persons, even those with sincere and conscientious objections to a vaccine, Plaintiff has a well-grounded fear and expectation that he would fact ostracization, abuse and possible threats of harm were his vaccination status and his request for a religious exception to be publicized.

## JURISDICTION AND VENUE

10.      This action arises under the United States Constitution, the New York State Constitution and the laws of the United States and of the State of New York. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C.

§§ 2000a, *et seq.*, and other Federal and State laws and regulations, to redress violations of federal and state statutes.

11.    This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. §§ 1331 and § 1343(a). Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

12.    This Honorable Court has supplemental jurisdiction regarding the New York State and New York City statutory claims pursuant to 28 U.S.C. § 1367.

13.    Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court. Plaintiff's claims for damages are authorized under 42 U.S.C. § 2000d-7 and by the general legal and equitable powers of this Honorable Court.

14.    Venue is proper under 28 U.S.C. § 1391(b) because Defendants are located in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims in this action occurred in this District.

## PARTIES

15.    Plaintiff is a resident of Brooklyn and enrolled as a full-time, first-year student at John Jay College of Criminal Justice ("JJC"), to which he has commuted for in-person classes from August to October 27, 2021.   Plaintiff is currently 18 years old, but, as of the date of Defendants' deadline for him to be vaccinated, he was 17 years old.

16.    Plaintiff is a Christian who practices the tenets of his faith and opposes voluntary abortion in all circumstances. Defendants' policies punish Plaintiff for exercising his

constitutionally and statutorily protected rights to make medical decisions consistent with his faith and sincerely held beliefs.

17.     As part of his personal religious beliefs, Plaintiff sincerely believes that he has a duty and obligation to live out his faith in all areas of life, including his personal medical decisions. Plaintiff objects based on his religious belief to each of the available vaccines based on his relation through development, manufacture and/or testing to aborted fetal cell lines.

18.     Defendant THE CITY UNIVERSITY OF NEW YORK ("CUNY") is a public state governmental entity established and organized under, and pursuant to, the laws of the State of New York with the authority to sue and be sued in its own name. Defendant CUNY operates within this District, and its senior college JJC is located at 899 10th Avenue, New York, New York. At all times relevant, Defendant CUNY has acted, and continues to act, under color of State law.

17.     Defendant KAROL V. MASON ("Mason") is an individual, an employee of CUNY and President of JJC. Upon information and belief, defendant Mason has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

18.     Mason violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in her implementation and enforcement of these policies. Mason is sued in her official and individual capacities.

19.     Defendant BRIAN A. KERR ("Kerr") is an individual, an employee of CUNY and Vice President for Enrollment Management and Student Affairs of JJC. Upon information and belief, defendant Kerr has responsibility for implementing and enforcing the policies at issue

in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

20.     Kerr violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies. Kerr is sued in his official and individual capacities.

21.     Defendant TONY BALKISSOON ("Balkissoon") is an individual, an employee of CUNY and Vice President and Executive Counsel of JJC. Upon information and belief, defendant Balkissoon has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

22.     Balkissoon violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies. Balkissoon is sued in his official and individual capacities.

23.     Defendant JILL MAXWELL ("Maxwell") is an individual, an employee of CUNY and Deputy Counsel of JJC. Upon information and belief, defendant Maxwell has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

24.     Maxwell violated, is violating and/or aided and abetted in others in violations of Plaintiff's constitutional and statutory rights in her implementation and enforcement of these policies. Maxwell is sued in her official and individual capacities.

25.     Defendants JANE DOES 1-10 are individuals employed by Defendant CUNY, whose names are currently unknown to Plaintiff, and who have responsibilities for implementing

and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests, and who violated, are violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies.

## STATEMENT OF FACTS

26.     On or about July 6, 2021, CUNY adopted Policy 7.061 SARS-CoV-2 COVID-19 Vaccination Verification Program (the "Student COVID-19 Vaccination Policy"), mandating that all students registering for a fully in-person or hybrid class for the 2021 Fall term must be fully vaccinated against COVID-19, unless they have been granted a medical exception or religious exception.

27.     The mandate contained in the Student COVID-19 Vaccination Policy was to become effective upon the licensure by the U.S. Food and Drug Administration ("FDA") of one of the COVID-19 vaccines.

28.     Upon information and belief, before it adopted the Student COVID-19 Vaccination Policy, CUNY did not engage in any independent analysis, study, review or fact-finding to determine the need for or impact of mandating vaccinations for all students at each and every CUNY college campus. Rather, CUNY adopted the policy because then-Governor Andrew M. Cuomo authorized it to do so.

29.     The Student COVID-19 Vaccination Policy provides for religious "exceptions" (also referred to as "exemptions" by CUNY personnel) and medical "exemptions." Per the terms of the Policy, a religious exception to the vaccination mandate may be granted:

> based on a person's sincerely held religious belief, practice, or observance, which includes any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his life a place of importance parallel to that of traditionally

recognized religions. Requests for Exceptions must be submitted to authorized campus representatives, who vary by campus and requestor group . . . .

30.     The Student COVID-19 Vaccination Policy further provides that any students who fail to be fully vaccinated or receive a religious exception or medical exemption to the Policy "may be prohibited from attending fully in-person or hybrid courses" at any CUNY facility. The Policy does not *require* that any student be denied access to in-person courses or to any of CUNY's facility.

31.     With respect to implementation and enforcement, the Student COVID-19 Vaccination Policy provides that, "Presidents, Deans, Vice Presidents, Vice Chancellors and leaders at non-campus locations are responsible for implementing this policy."

32.     The Student COVID-19 Vaccination Policy does not by its terms supersede or displace any other CUNY policy, practice or program, including CUNY's policies governing religious accommodations.

33.     The Student COVID-19 Vaccination Policy was in effect at all times relevant to Plaintiff's claims and remains in effect.

34.     CUNY also has promulgated a Religious Accommodations Policy, which states that students requesting a religious accommodation should contact the Office for Student Affairs at the College in which they are enrolled, and that the College's "Chief Student Affair Officer, or a designee, and the student will engage in an interactive process with the goal of finding an acceptable accommodation."

35.     CUNY's Religious Accommodations Policy states in part that,

CUNY generally will not question that a request for religious accommodation is based on a sincerely held belief. However, if CUNY has genuine reason to doubt that a belief qualifies as

religious, or is sincerely held, CUNY may make a limited inquiry, asking for supporting documentation.

36.     CUNY's Religious Accommodations Policy further states that the "denial of the request must be made in as soon as practicable, taking into account the urgency of the request, and sent in writing to the individual making the request," and that it must state "the reason(s) the request was denied."

37.     CUNY's Religious Accommodations policy also provides students an opportunity to appeal the denial of a request for a religious accommodation. It states that students "may appeal a denial of his accommodation request by filing a complaint with the Chief Diversity Officer at his College," who then "will mediate to try to resolve the issues between the individual and the College to find an acceptable accommodation."  If mediation fails, "then the Chief Diversity Officer, or a designee, will investigate the complaint and make a recommendation to the College President . . . [who] will make the final determination concerning the complaint."

38.     CUNY's Religious Accommodations policy was in effect at all times relevant to Plaintiff's claims and remains in effect.

39.     In August 2021, Plaintiff enrolled in five (5) courses at JJC, totaling fifteen (15) academic credits, for the Fall 2021 academic term from August to December 2021.

40.     Three (3) of Plaintiff's courses at JJC – in Mathematics, Literature and Political Science – are fully in-person, which means that Plaintiff is required to attend in-person classroom lectures at JJC's campus in Manhattan on a total of two (2) days each week. Those three courses represent nine (9) academic credits.

41.     On or about August 23, 2021, the FDA granted full approval and licensure for general use for the Pfizer/BioNTech COVID-19 vaccine, thereby making the Student COVID-19 Vaccination Policy effective.

42.     CUNY established a deadline of October 7, 2021 for students enrolled in any CUNY college, including JJC, to become fully vaccinated against COVID-19 and to upload his or her vaccination documentation via CUNY's computerized system, known as "CUNYfirst."

43.     CUNY threatened to administratively withdraw from in-person classes any students who did not receive CUNY's approval of his or her COVID-19 vaccination documentation, or to whom CUNY did not grant a medical exemption or religious exception by the October 7 deadline.

44.     CUNY's Fall 2021 academic term began on August 25, 2021.

45.     Since on or about August 25, 2021, Plaintiff has attended his three (3) in-person classes at JJC's campus on two (2) days each week.

46.     Since on or about August 25, 2021, Plaintiff has been required by CUNY to submit every week to a PCR (polymerase chain reaction) test for COVID-19 infection at JJC and to grant permission for the results of each such PCR test to be reported to CUNY and to Plaintiff. Plaintiff has submitted to every required weekly test, and has been found negative for COVID-19 infection on every such test.

47.     As of October 7, 2021, Defendants' student vaccination deadline, Plaintiff was eligible to receive only the Pfizer/BioNTech vaccine because he was 17 years old, and only the Pfizer/BioNTech vaccine was approved for minors under 18 years old. Upon information and belief, the Pfizer/BioNTech vaccine was tested using the HEK293 cell line derived from an aborted human fetus.

48.     On or about September 1, 2021, in accordance with the Student COVID-19 Vaccination Policy and guidance published for students on CUNY's website, Plaintiff submitted a request for an exception to the vaccination mandate on specific religious grounds. Plaintiff's

request for a religious exception was based on the fact that each of the available vaccines was produced and/or tested using aborted human fetal cell lines, and, as a Christian, he objected to the use of human fetal cell lines derived from voluntary abortion and to receiving a vaccine produced and/or tested in reliance on such cell lines. Plaintiff stated that, in good conscience, he cannot participate in or accept practices that perpetuate and encourage the relationship between abortion, medicine and human trafficking, no matter when that connection was initiated or how long a practice may have been followed.

49.     In accordance with CUNY's Student COID-19 Vaccination Policy, Plaintiff submitted his request for an exception on religious grounds through the CUNYfirst system, and the request was co-signed by Plaintiff's father because Plaintiff was a minor.

50.     On or about September 7, 2021, Plaintiff was notified through CUNYfirst that his request for a religious accommodation was not approved. Defendants sent Plaintiff a boilerplate message, stating in full:

> Your request was reviewed by JJ College Counsel in consultation with CUNY's Office of General [*sic*] to ensure compliance with the law and policy while ensuring CUNY's interest in the maintenance of public health.  Your exemption request is denied at this time.

51.     Contrary to CUNY's Religious Accommodation policy, CUNY's September 7 notice to Plaintiff did not include or provide any reasons for the denial of Plaintiff's request for a religious accommodation.

52.     Contrary to CUNY's Religious Accommodations policy, Defendants did not seek any additional information from Plaintiff, did not inquire as to his sincerely held religious beliefs, and did not engage in any interactive process with Plaintiff in regard to his request for a religious accommodation to the student vaccine mandate.

53. On September 8, 2021, in accordance with the Religious Accommodations policy, Plaintiff's father, on behalf of the then-minor Plaintiff, sent an email to JJC's Chief Diversity Officer Gabriela Leal, requesting a statement of the specific reason(s) for the denial of Plaintiff's request for an exception to the mandatory student vaccination policy, and requesting an opportunity to appeal the denial of a religious accommodation.

54. On September 8, 2021, Chief Diversity Officer Gabriela Leal replied to Plaintiff and Plaintiff's father by email, stating that "[r]equests for religious accommodations are reviewed by the Executive Counsel's office. Executive Counsel Tony Balkissoon and Deputy Counsel Jill Maxwell, copied here, will be able to assist you." Defendants Balkissoon and Maxwell were cc'd on Leal's email.

55. On September 13, 2021, Defendant Balkissoon sent an email to Plaintiff and Plaintiff's father, in which Balkissoon summarily rejected Plaintiff's requests for an explanation for CUNY's denial of his religious accommodation request and for the opportunity to appeal the denial. Balkissoon maintained that JJC's "process does not include the right to appeal, nor does it include the provision of specific reasons for denials." Defendant Maxwell was cc'd on Balkissoon's email.

56. On September 15, 2021, Plaintiff's father sent an email to Defendant Balkissoon ("September 15 email") and quoted to him excerpts from CUNY's Religious Accommodations policy, which state that CUNY will provide an explanation for the denial of a religious accommodation request, engage in an interactive process with the student, and allow a student the right of appeal. Plaintiff's father requested that Balkissoon provide a copy of the "process" to which Balkissoon had referred in his September 13 email. Defendant Maxwell and the Office of General Counsel of CUNY were cc'd on the September 15 email.

57.     Defendants did not respond or reply to the September 15 email.

58.     On September 27, 2021, Plaintiff's father sent another email to Defendant Balkissoon and cc'd Defendant Maxwell and the Office of General Counsel of CUNY, requesting that Balkissoon respond to the September 15 email and further requesting that no adverse action be taken regarding Plaintiff's academic status, given JJC's failure to respond to his requests for the reasons for the denial of the accommodation request, for an opportunity for an interactive dialogue and/or for an appeal.

59.     On September 27, 2021, Defendant Balkissoon responded by email to Plaintiff and to Plaintiff's father and cc'd Defendant Maxwell and the Office of General Counsel of CUNY. In his email, Balkissoon failed and refused to provide a copy of the "process" to which he had referred, or to provide any explanation for the denial of Plaintiff's request for a religious exception, or to permit any interactive dialogue regarding the denial, or to permit an appeal of the denial. Instead, Balkissoon summarily reiterated that Plaintiff's "religious exception request was denied, and there is no appeal process." Balkissoon further stated that "[t]he academic consequences, if any, will be based on CUNY's policies, not on email correspondence."

60.     Based on his religious objections, Plaintiff did not receive a COVID-19 vaccination or provide any documentation of same to Defendant by the October 7 deadline.

61.     From October 7 through October 27, 2021, Plaintiff continued to attend three in-person classes at CUNY's JJC campus on two days each week.

62.     From October 7 through October 27, 2021, Plaintiff continued to comply with CUNY's requirement that he submit to weekly PCR tests, and he tested negative on each such test.

63.     On October 28, 2021, without advance notice or warning, while Plaintiff was in transit on the subway from his home to JJC's campus for a required in-person class, Defendants unilaterally barred Plaintiff from entering upon JJC's campus.

64.     On October 28, 2021, Plaintiff emailed JJC's Location Vaccine Authority Liaison, Malaine Clarke, and inquired why his access to JJC's campus and classes was denied. On that same date, Clarke replied to Plaintiff by email and stated:

> This is a CUNY action and not campus specific. There is a pause in the system as CUNY is preparing to drop students for Covid vaccine verification non-compliance.

Clarke added that if Plaintiff had not uploaded his vaccine information prior to October 7, he would be "academically withdrawn."

65.     Plaintiff final exams begin on or about December 15, 2021; CUNY's Fall 2021 academic term ends on December 21, 2021.

66.     Upon information and belief, Defendants' professed "interest in the maintenance of public health" is irrationally directed only at students and not at others present on CUNY campuses. Upon information and belief, CUNY has not mandated that any of its employees be vaccinated against COVID-19. Thus, while CUNY has denied Plaintiff, a fully enrolled student, access to in-person classes at JJC, it continues to grant full access to its facilities, including JJC's buildings and campus, to employees and faculty who are not vaccinated against COVID-19.

67.     Upon information and belief, Defendants' professed "interest in the maintenance of public health" is discriminatorily targeted at those with religious objections to the student vaccine policy.

68.     During the week of October 18-24, 2021, CUNY reportedly conducted over 200 COVID-19 PCR tests of JJC students. Not a single one was positive for COVID-19 infection. Further, during the two-month period from August 25 to October 24, 2021, CUNY reportedly

conducted over 5,100 PCR tests of JJC students; the positive infection rate for COVID-19 was just 0.3%.

69.     There is no current public health crisis at JJC that justifies Defendants' drastic and unlawful trampling upon Plaintiff's rights, as CUNY's own testing statistics demonstrate.

## AS AND FOR A FIRST CAUSE OF ACTION
## (Free Exercise; United States Constitution, 42 U.S.C. § 1983)

70.     Plaintiff hereby incorporates and repeats the allegations of paragraphs 1 through 69 as if fully restated herein.

71.     By reason of the aforementioned acts, policies, practices and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of his right to the free exercise of his sincerely held religious beliefs in violation of the First Amendment, as applied to the states and his political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

72.     Defendants violated Plaintiff's First Amendment right to freely exercise his religious beliefs by mandating an objectionable medical treatment that substantially interferes with Plaintiff's religious free exercise rights.

73.     Defendant CUNY's policies violate the First Amendment by punishing a student who exercises his religious beliefs in connection with his personal medical decisions.

74.     Plaintiff's adherence to his sincerely held religious beliefs in declining the available COVID-19 vaccines is a religious exercise.

75.     Defendants' policies and practices are not general laws as they specifically target Christians who share Plaintiff's sincerely held religious views, but, upon information and belief, leave untouched students who ascribe to other or no faith traditions.

76.     By design, Defendants' accommodation denials, policies and practices are imposed on some religious students, but not on others, resulting in unjust discrimination amongst religious beliefs.

77.     Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiff's First Amendment right to free exercise of religion.

78.     Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

79.     Defendants' policies and practices create government-imposed, coercive pressure on Plaintiff to change or violate his sincerely held religious beliefs.

80.     Defendants' policies, practices and procedures, punish and impose discipline on Plaintiff for exercising his right to free exercise of his religious beliefs. Defendants' actions injure Plaintiff by chilling his religious activity and religious speech through threat of discipline and sanction by Defendants' for failure to comply with its new policies.

81.     By these acts alleged, Defendant CUNY has violated and is continuing to violate Plaintiff's right to free exercise of religion under the First and Fourteenth Amendments.

82.     By these acts alleged, Defendants Mason, Kerr, Balkissoon, Maxwell and Jane Does 1-10 (hereinafter, the "Individual Defendants") have violated and are continuing to violate Plaintiff's right to free exercise of religion under the First and Fourteenth Amendments and have the power to redress these constitutional violations.

83.     As a direct and proximate result of Defendants' constitutional violations, Plaintiff has suffered, is suffering and will continue to suffer irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for the loss of his constitutional rights.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Procedural Due Process; United States Constitution. 42 U.S.C. § 1983)

84.     Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 83 above as if fully restated herein.

85.     Defendant CUNY accepted Plaintiff for enrollment at JJC, and he was and is enrolled at JJC for the Fall 2021 academic term.

86.     An implied contract was formed between CUNY and Plaintiff when CUNY accepted him for enrollment.

87.     The terms of the implied contract between CUNY and Plaintiff are contained in CUNY's published policies and rules, including the Student COVID-19 Vaccination Policy and the Religious Accommodations policy.

88.     Implicit in the contract between Plaintiff and CUNY is the requirement that CUNY and the Individual Defendants act in good faith in their dealings with Plaintiff.

89.     Plaintiff has fulfilled all the obligations and requirements of his implied contract with CUNY.

90.     Plaintiff has a liberty or property interest in his dealings with Defendants based upon the implied contract between Plaintiff and CUNY.

91.     By the acts and conduct alleged herein, Defendants deprived Plaintiff of his liberty or property interest without adequate process.

92.     By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to due process under the Fourteenth Amendment of the federal Constitution and 42 U.S.C. § 1983..

93.     By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983, and they have the power to redress these constitutional violations.

94.     As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for the loss of his constitutional rights.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Equal Protection; United States Constitution. 42 U.S.C. § 1983)

95.     Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 94 above as if fully restated herein.

96.     In barring Plaintiff from CUNY's facilities and classrooms and threatening to academically withdraw him from three courses in which he is enrolled, Defendants have intentionally treated Plaintiff differently from similarly-situated students who do not share Plaintiff's sincerely held religious beliefs.

97.     There is no rational basis for Defendants' different treatment of Plaintiff as compared to similarly-situated students.

98.     By the acts and conduct alleged herein, Defendants intentionally treated Plaintiff differently from similarly-situated students based on their purposeful and intentional discrimination against him based on his religious beliefs.

99.     By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to equal protection under the Fourteenth Amendment of the federal Constitution and 42 U.S.C. § 1983.

100.    By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983, and they have the power to redress these constitutional violations.

101.    As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will suffer, irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for the loss of his constitutional rights.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Free Exercise of Religion, N.Y. State Constitution)

102.    Plaintiff hereby incorporates and repeats the allegations of paragraphs 1 through 101 as if fully restated herein.

103.    Section 3 of the Constitution of the State of New York guarantees that "the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."

104.    By reason of the aforementioned acts, policies, practices and procedures created, adopted and enforced under color of state law, Defendants deprived Plaintiff of his right to freely exercise his religion in violation of Section 3 of the New York Constitution.

105.    Defendants' policies, practices and procedures punish and impose discipline on any student for exercising his or her state constitutional rights.

106.    Defendants' actions injure Plaintiff by chilling his constitutionally protected activity through threat of and sanction by Defendants for failure to comply with its new policies.

107. By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to free exercise and enjoyment of religious profession under the New York State Constitution.

108. By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to free exercise and enjoyment of religious profession under the New York State Constitution, and they have the power to redress these constitutional violations.

109. As a direct and proximate result of Defendants' violations of the state Constitution, Plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for the loss and denial of his state constitutional rights.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (New York State Human Rights Law, Exec. Law §§ 296, *et seq.*)

110. Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 109 above as if fully restated herein.

111. Under the New York State Human Rights Law, it is an unlawful discriminatory practice for any employee of any place of public accommodation to refuse, withhold from or deny to any person any of the accommodations, advantages, services, facilities or privileges thereof, on account of the creed of such person.

112. CUNY and its college JJC are places of public accommodation as defined by the New York State Human Rights Law.

113.    Under the New York State Human Rights Law, it is an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under such law, or to attempt to do so.

114.    The Individual Defendants, by the acts alleged herein, aided, abetted, incited, compelled and/or coerced violations of Plaintiff's right to the use and enjoyment of CUNY's facilities, accommodations, advantages, services, facilities and/or privileges on account of Plaintiff's creed or religion.

115.    The Individual Defendants' aiding and abetting of violations of the New York State Human Rights Law was knowing and willful.

116.    As a direct and proximate result of the Individual Defendants' acts as alleged herein, Plaintiff has been harmed and is entitled to compensatory and punitive damages from the Individual Defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION
## (New York City Human Rights Law, N.Y.C. Admin. Code, Title 8)

117.    Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 116 above as if fully restated herein.

118.    Under the New York City Human Rights Law, it is an unlawful discriminatory practice for any employee of any place or provider of public accommodation, because of any person's actual or perceived creed, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.

119.    CUNY and its college JJC are places of public accommodation as defined by the New York City Human Rights Law.

120.     Under the New York City Human Rights Law, it is an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under such Law, or to attempt to do so.

121.     The Individual Defendants, by the acts alleged herein, aided, abetted, incited, compelled and/or coerced violations of Plaintiff's right to the use and enjoyment of CUNY's facilities, accommodations, advantages, services, facilities and/or privileges on account of Plaintiff's creed or religion.

122.     The Individual Defendants' aiding and abetting of violations of the New York City Human Rights Law was knowing and willful.

123.     As a direct and proximate result of the Individual Defendants' acts as alleged herein, Plaintiff has been harmed and is entitled to compensatory and punitive damages from the Individual Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff ask this Honorable Court to grant and allow him:

a)     Prospective injunctive relief against Defendant CUNY and the Individual Defendants, enjoining the unconstitutional implementation, application and enforcement of Defendants' policies, practices and procedures as set forth in this Verified Complaint and order the Individual Defendants to redress those constitutional violations, in a temporary restraining order, preliminary injunction and permanent injunction, reinstating Plaintiff's right to continue his education without interruption;

b)     A declaration that Defendants violated Plaintiff's clearly established statutory and constitutional rights;

c)     A declaration that the policies, practices and procedures of Defendants as set forth in this Verified Complaint violate the United States Constitution and the New York State Constitution;

d)     An award of compensatory and punitive damages for Defendants' violations of Plaintiff's rights;

e)    An award of Plaintiff's reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable law;

f)    An award of compensatory and punitive damages, attorneys' fees and costs jointly and severally against the Individual Defendants for aiding and abetting violations of the New York State and New York City Human Rights Laws; and

g)    Such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
       November 15, 2021

/S/ Kevin G. Jenkins
Kevin G. Jenkins
215 Skylands Road
Ringwood, New Jersey 07456
Kevinlocal12@aol.com
201-400-6720
*Attorney for Plaintiff*