UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOSEPH COLLINS, | ) |
| Plaintiff, | ) Civil Action No. 21-cv-09544-NRB |
| v. | ) |
| THE CITY UNIVERSITY OF NEW YORK, KAROL V. MASON, BRIAN A. KERR, TONY BALKISSOON, JILL MAXWELL, GABRIELA LEAL, and JANE DOES 1-10, individuals whose names are currently unknown to Plaintiff, | ) **FIRST AMENDED** <br> **VERIFIED COMPLAINT** |
| Defendants. | ) |

Plaintiff JOSEPH COLLINS, by and through his undersigned counsel, as and for his Verified Complaint against the above-named Defendants, hereby states and avers as follows:

## INTRODUCTION

1.      Plaintiff, a full-time student enrolled in his first year at John Jay College of Criminal Justice, a senior college of the City University of New York ("CUNY"), brings this action to protect and vindicate his fundamental constitutional and statutory rights, including those under the First and Fourteenth Amendments to the United States Constitution, the New York State Constitution, the New York State Human Rights Law and the New York City Human Rights Law, which defendants by their acts, policies, practices and procedures have deprived Plaintiff.

2.      Defendants have unjustly discriminated against plaintiff, a fully enrolled student, by failing and refusing to accommodate his sincerely held religious beliefs, by involuntarily withdrawing him from classes in which he is enrolled for the Fall 2021 and Spring 2022 terms,

and by refusing to allow him to attend classes on or to enter Defendants' campus in New York City.

3.      Defendants have promulgated, implemented and enforced a student vaccine mandate policy, which professes to provide accommodations for any student's sincerely held religious beliefs but is in fact mere theater. In practice Defendants have failed and refused to accommodate Plaintiff's sincerely held religious beliefs and have discriminated against him based on such beliefs in violation of his federal and state constitutional and statutory rights.

4.      Moreover, in failing and refusing to accommodate Plaintiff's sincerely held religious beliefs, Defendants have acted contrary to the express terms of their own policies by numerous acts, including but not limited to refusing to evaluate Plaintiff's accommodation request in good faith, refusing to explain their refusal to grant an accommodation, refusing to engage in an interactive dialogue with Plaintiff regarding his request, and refusing to permit or allow an appeal from their pro-forma denial of any accommodation to Plaintiff.

5.      By such conduct, Defendants have denied Plaintiff his constitutional rights to free exercise of religion, procedural due process and equal protection of law. As set forth in this Complaint, the policies, practices and procedures of Defendants were the cause of, and the moving force behind, the statutory and constitutional violations in this case.

6.      In this action, Plaintiff seeks to enjoin the unconstitutional application of Defendants' policies, practices and procedures as set forth in this Complaint, by preliminary and permanent injunctive relief and declaratory relief, as well as compensatory and punitive damages, fees and costs.

## JURISDICTION AND VENUE

7.      This action arises under the United States Constitution, the New York State Constitution and the laws of the United States and of the State of New York. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. §§ 2000a, *et seq.*, and other Federal and State laws and regulations, to redress violations of federal and state statutes.

8.      This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. §§ 1331 and § 1343(a). Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      This Honorable Court has supplemental jurisdiction regarding the New York State and New York City statutory claims pursuant to 28 U.S.C. § 1367.

10.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court. Plaintiff's claims for damages are authorized under 42 U.S.C. § 2000d-7 and by the general legal and equitable powers of this Honorable Court.

11.      Venue is proper under 28 U.S.C. § 1391(b) because Defendants are located in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims in this action occurred in this District.

## PARTIES

12.      Plaintiff is a resident of Brooklyn and enrolled as a full-time, first-year student at John Jay College of Criminal Justice ("JJC"), to which he commuted for in-person classes from August to October 27, 2021.

13.     Plaintiff enrolled in JJC in August 2021 at the age of 17 years with the hopes and expectations of pursuing his studies and graduating in May 2025 with a four-year Bachelor of Arts degree in Criminal Justice, which is his declared major. Plaintiff seeks to pursue a career in the field of criminal justice and believed that JJC offered him the best opportunity to do so.

14.     Plaintiff is a Christian who practices the tenets of his faith and sincerely believes that he has a duty and obligation to live out his faith in all areas of life, including his personal medical decisions.

15.     At all relevant times prior to, during and since the actions of Defendants that form the basis for this Complaint, Plaintiff has opposed voluntary abortion in any and all circumstances as the taking of an innocent and unique human life, based on his belief in the sanctity of human life.

16.     Plaintiff objects based on his religious beliefs to each of the available vaccines based on its reliance on, use of and relation to, through either its development, manufacture and/or testing, the cell lines aborted human fetuses.

17.     Defendants' policies punish Plaintiff for exercising his constitutionally and statutorily protected rights to make medical decisions consistent with his faith and sincerely held religious beliefs.

18.     Defendant THE CITY UNIVERSITY OF NEW YORK ("CUNY") is a public state governmental entity established and organized under, and pursuant to, the laws of the State of New York with the authority to sue and be sued in its own name. Defendant CUNY operates within this District, and its senior college JJC is located at 899 10th Avenue, New York, New York. At all times relevant, Defendant CUNY has acted, and continues to act, under color of State law.

19.     Defendant KAROL V. MASON ("Mason") is an individual, an employee of CUNY and holds the position of President of JJC. Upon information and belief, defendant Mason has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

20.     Mason violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in her implementation and enforcement of these policies. Mason is sued in her official and individual capacities.

21.     Defendant BRIAN A. KERR ("Kerr") is an individual, an employee of CUNY and holds the position of Vice President for Enrollment Management and Student Affairs of JJC. Upon information and belief, defendant Kerr has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

22.     Kerr violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies. Kerr is sued in his official and individual capacities.

23.     Defendant TONY BALKISSOON ("Balkissoon") is an individual, an employee of CUNY and holds the position of Vice President and Executive Counsel of JJC. Upon information and belief, defendant Balkissoon has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

24.     Balkissoon violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies. Balkissoon is sued in his official and individual capacities.

25.     Defendant JILL MAXWELL ("Maxwell") is an individual, an employee of CUNY and holds the position of Deputy Counsel of JJC. Upon information and belief, defendant Maxwell has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

26.     Maxwell violated, is violating and/or aided and abetted in others in violations of Plaintiff's constitutional and statutory rights in her implementation and enforcement of these policies. Maxwell is sued in her official and individual capacities.

27.     Defendant GABRIELA LEAL ("Leal") is an individual, an employee of CUNY and holds the position of Interim Director – Compliance & Diversity at JJC. Upon information and belief, defendant Leal has responsibility for implementing and enforcing the policies at issue in this case, evaluating JJC students' requests for religious accommodations, and making determinations regarding such requests.

28.     Leal violated, is violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in his implementation and enforcement of these policies. Leal is sued in her official and individual capacities.

29.     Defendants JANE DOES 1-10 are individuals employed by Defendant CUNY, including but not limited to persons who are members of the "CUNY Central Office Religious Exceptions Team," whose names are currently unknown to Plaintiff, and who have responsibilities for implementing and enforcing the policies at issue in this case, evaluating JJC

students' requests for religious accommodations, including Plaintiff, and making determinations regarding such requests, and who violated, are violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in the implementation and enforcement of these policies.

## STATEMENT OF FACTS

### *CUNY's Published Policies*

30.    CUNY has published to its students and maintains a Reasonable Accommodations and Academic Adjustments policy that includes express provisions for the granting of Religious Accommodations ("**Religious Accommodations Policy**"), which states that students requesting a religious accommodation should contact the Office for Student Affairs at the College in which they are enrolled, and that the College's "Chief Student Affair Officer, or a designee, and the student will engage in an interactive process with the goal of finding an acceptable accommodation."

31.    The Religious Accommodations Policy further states that "CUNY generally will not question that a request for religious accommodation is based on a sincerely held belief. However, if CUNY has genuine reason to doubt that a belief qualifies as religious, or is sincerely held, CUNY may make a limited inquiry, asking for supporting documentation."

32.    CUNY's Religious Accommodations Policy further states that the "denial of the request must be made as soon as practicable, taking into account the urgency of the request, and sent in writing to the individual making the request," and that the notice to the student must state "the reason(s) the request was denied."

33.    The Religious Accommodations Policy also provides students an opportunity to appeal the denial of a request for a religious accommodation. Specifically, students "may appeal

a denial of his accommodation request by filing a complaint with the Chief Diversity Officer at his College," who then "will mediate to try to resolve the issues between the individual and the College to find an acceptable accommodation."  If mediation fails, "then the Chief Diversity Officer, or a designee, will investigate the complaint and make a recommendation to the College President . . . [who] will make the final determination concerning the complaint."

34.    The Religious Accommodations Policy was in effect at all times relevant to Plaintiff's claims, and it remains in effect.

35.    On or about July 6, 2021, CUNY adopted Policy 7.061 SARS-CoV-2 COVID-19 Vaccination Verification Program (the "**Student COVID-19 Vaccination Policy**"), which required that all students registering for a fully in-person or hybrid classes for the 2021 Fall term be fully vaccinated against COVID-19, unless they have been granted a medical exception or religious exception thereunder.

36.    The Student COVID-19 Vaccination Policy "strongly recommend[ed]" but did not require that other "members of the community," including CUNY employees, officers and faculty, obtain the COVID-19 vaccine.

37.    The mandate contained in the Student COVID-19 Vaccination Policy was to become effective upon the licensure by the U.S. Food and Drug Administration ("FDA") of one of the COVID-19 vaccines.

38.    Upon information and belief, before it adopted the Student COVID-19 Vaccination Policy, CUNY did not engage in any independent analysis, study, review or fact-finding to determine the need for or impact of mandating vaccinations for all students at each and every CUNY college campus. Rather, CUNY adopted the policy because then-Governor Andrew M. Cuomo authorized it to do so.

39.     The Student COVID-19 Vaccination Policy provides for religious exceptions and medical exemptions, both of which are referred to as "exemptions" by CUNY employees. Per the terms of the Policy, a religious exception to the vaccination mandate may be granted:

> based on a person's sincerely held religious belief, practice, or observance, which includes any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his life a place of importance parallel to that of traditionally recognized religions. Requests for Exceptions must be submitted to authorized campus representatives, who vary by campus and requestor group . . . .

40.     The Student COVID-19 Vaccination Policy further provides that any students who fail to be fully vaccinated or receive a religious exception or medical exemption to the Policy "may be prohibited from attending fully in-person or hybrid courses" at any CUNY facility. The Policy does <u>not</u>, however, require that any student be denied access to in-person courses or to any of CUNY's facility.

41.     With respect to implementation and enforcement, the Student COVID-19 Vaccination Policy provides that, "Presidents, Deans, Vice Presidents, Vice Chancellors and leaders at non-campus locations are responsible for implementing this policy."

42.     The Student COVID-19 Vaccination Policy does not by its terms supersede or displace any other CUNY policy, practice or program, including CUNY's policies governing religious accommodations.

43.     The Student COVID-19 Vaccination Policy was in effect at all times relevant to Plaintiff's claims and remains in effect.

### *Plaintiff's Enrollment in JJC and Compliance with Policies*

44.     In August 2021, Plaintiff enrolled in five (5) courses at JJC, totaling fifteen (15) academic credits, for the Fall 2021 academic term, which went from August to December 2021.

45.     Three (3) of Plaintiff's Fall 2021 courses at JJC – in Mathematics, Literature and Political Science – were fully in-person, which means that Plaintiff was required to attend in-person classroom lectures at JJC's campus in Manhattan on a total of two (2) days each week. Those three courses represented nine (9) academic credits.

46.     On or about August 23, 2021, the FDA granted full approval and licensure for general use for the Pfizer/BioNTech COVID-19 vaccine.

47.     On or about August 23, 2021, CUNY adopted "Supplemental Policy No. 3," which stated that the FDA's licensure of the Pfizer vaccine "now requires the implementation of" the Student COVID-19 Vaccination Policy requiring that all students attending fully in-person or hybrid courses in any CUNY facilities and programs be fully-vaccinated before the start of the Fall 2021 term, "subject to limited Exceptions and Exemptions."

48.     CUNY established a deadline of October 7, 2021 for students enrolled in any CUNY college, including JJC, to become fully vaccinated against COVID-19 and to upload their vaccination documentation a computerized system known as "CUNYfirst."

49.     CUNY threatened to administratively withdraw from in-person classes any students who did not receive CUNY's approval of their COVID-19 vaccination documentation, or to whom CUNY did not grant a medical exemption or a religious exception by the October 7 deadline.

50.     CUNY's Fall 2021 academic term began on August 25, 2021.

51.     Beginning on or about August 25, 2021, Plaintiff attended his three (3) in-person classes at JJC's campus on two (2) days each week.

52.     Beginning on or about August 25, 2021, Plaintiff was required by CUNY to submit every week to a PCR (polymerase chain reaction) test for COVID-19 infection at JJC and to grant permission for the results of each such PCR test to be reported to CUNY and to Plaintiff.

53.     Plaintiff submitted to every required weekly PCR test and was found negative for COVID-19 infection on every such test.

### *Defendants Deny Plaintiff's 1st Request for an Accommodation*

54.     As of the October 7, 2021 vaccination deadline, Plaintiff was eligible to receive only the Pfizer/BioNTech vaccine because he was 17 years old. Only the Pfizer/BioNTech vaccine was approved for minors under 18 years old.

55.     Upon information and belief, the Pfizer/BioNTech vaccine was tested using the HEK293 cell line derived from an aborted human fetus. For that reason, Plaintiff objected to taking the Pfizer/BioNTech vaccine on religious grounds.

56.     On or about September 1, 2021, in accordance with the Student COVID-19 Vaccination Policy and guidance published for students on CUNY's website, Plaintiff submitted a request for an exception to the vaccination mandate on specific religious grounds ("September request").

57.     Plaintiff's September request for a religious exception was based on the fact that each of the available vaccines was produced and/or tested using human cell lines derived from aborted fetuses, and that, as a Christian, he objected to the use of cell lines derived from voluntary abortion and to receiving a vaccine produced and/or tested in reliance on such cell lines. Plaintiff stated that, in good conscience, he cannot participate in or accept practices that perpetuate and encourage the relationship between abortion, medicine and human trafficking, no matter when that connection was initiated or how long a practice may have been followed.

58.     In accordance with CUNY's Student COVID-19 Vaccination Policy, Plaintiff's request for an exception on religious grounds was co-signed by Plaintiff's father because Plaintiff was a minor and was submitted through the CUNYfirst system.

59.     On or about September 7, 2021, Defendants notified Plaintiff through the CUNYfirst system that his request for a religious accommodation was not approved. Defendants' boilerplate message to Plaintiff stated in full:

> Your request was reviewed by JJ College Counsel in consultation with CUNY's Office of General [*sic*] to ensure compliance with the law and policy while ensuring CUNY's interest in the maintenance of public health. Your exemption request is denied at this time.

60.     Contrary to the Religious Accommodations Policy, Defendants' September 7 notice to Plaintiff did not include or provide any explanation or reasons for their denial of Plaintiff's request for a religious accommodation.

61.     Contrary to the Religious Accommodations Policy, prior to issuing their boilerplate denial, Defendants did not seek any additional information from Plaintiff, did not inquire as to his sincerely held religious beliefs, and did not engage in any interactive process with Plaintiff in regard to his request for a religious accommodation to the student vaccine mandate.

62.     Defendants' rejection of Plaintiff's September request was based on Defendants' hostility toward Plaintiff's sincerely held religious beliefs.

63.     On September 8, 2021, in accordance with the Religious Accommodations Policy, Plaintiff's father, on behalf of then-minor Plaintiff, sent an email to Defendant Leal, requesting an explanation of the specific reason(s) for the denial of Plaintiff's request for an exception to the Student COVID-19 Vaccination Policy, and requesting an opportunity to appeal the denial.

64.     On September 8, 2021, the Defendant Leal replied to Plaintiff and Plaintiff's father by email, stating that "[r]equests for religious accommodations are reviewed by the Executive Counsel's office. Executive Counsel Tony Balkissoon and Deputy Counsel Jill Maxwell, copied here, will be able to assist you." Defendants Balkissoon and Maxwell were cc'd on the email.

65.     On September 13, 2021, Defendant Balkissoon replied by email to Plaintiff and Plaintiff's father ("September 13 email"), in which Balkissoon summarily rejected Plaintiff's requests for an explanation for the denial of his request for an accommodation and the opportunity to appeal. Balkissoon asserted that JJC's "process does not include the right to appeal, nor does it include the provision of specific reasons for denials."

66.     On September 15, 2021, Plaintiff's father sent an email to Defendant Balkissoon, copying Defendant Maxwell and the Office of General Counsel of CUNY ("September 15 email"), in which he requested that Balkissoon provide a copy of the "process" to which Balkissoon had referred in his September 13 email. Plaintiff's father also quoted the specific provisions of the Religious Accommodations Policy that guarantee that CUNY will provide an explanation for the denial of any religious accommodation request, will engage in an interactive process with the student, and will allow the right of appeal from any denial.

67.     Defendants did not respond or reply to the September 15 email.

68.     On September 27, 2021, Plaintiff's father sent another email to Defendant Balkissoon and again copied Defendant Maxwell and the Office of General Counsel of CUNY, requesting a response to his September 15 email and further requesting that no adverse action be taken regarding Plaintiff's academic status, given Defendants failures to respond to his requests

for the reasons for the denial of the accommodation request, for an opportunity for an interactive dialogue and/or for an appeal, as guaranteed by the Religious Accommodations Policy.

69.     On September 27, 2021, Defendant Balkissoon responded by email to Plaintiff and to Plaintiff's father and copied Defendant Maxwell and the Office of General Counsel of CUNY ("September 27 email"). Balkissoon flatly asserted that Plaintiff's "religious exception request was denied, and there is no appeal process." Balkissoon failed and refused to provide a copy of the "process" to which he had referred in his September 13 email, to provide any explanation for the denial of Plaintiff's request for a religious exception, or to permit any interactive dialogue with Plaintiff regarding the denial.

70.     In response to Plaintiff's father's request that CUNY take no adverse action against Plaintiff pending resolution of the matter, Balkissoon declared in his September 27 email that "[t]he academic consequences, if any, will be based on CUNY's policies, not on email correspondence."

71.     Based on his religious objections, Plaintiff did not receive a COVID-19 vaccination or provide any documentation of receipt of a vaccine to Defendants by the October 7 deadline.

72.     From October 7 through October 27, 2021, Plaintiff continued to attend his three (3) in-person classes at CUNY's JJC campus on two days each week.

73.     From October 7 through October 27, 2021, Plaintiff continued to comply with CUNY's requirement that he submit to weekly PCR tests, and he tested negative on each such test.

74.     On October 28, 2021, without advance notice or warning, while Plaintiff was in transit on the subway from his home to JJC's campus for a required in-person class, Defendants unilaterally barred Plaintiff from entering upon JJC's campus.

75.     On October 28, 2021, Plaintiff emailed JJC's Location Vaccine Authority Liaison, Malaine Clarke, and inquired why he was denied access to JJC's campus and classes. On that same date, Clarke replied to Plaintiff by email and stated:

> This is a CUNY action and not campus specific. There is a pause in the system as CUNY is preparing to drop students for Covid vaccine verification non-compliance.

Clarke added that if Plaintiff had not uploaded his vaccine information prior to October 7, he would be "academically withdrawn."

76.     Plaintiff's final exams begin on or about December 15, 2021, and CUNY's Fall 2021 academic term ended on December 21, 2021.

77.     Defendants unjustly and without notice academically withdrew Plaintiff from the three in-person classes in which he was enrolled for the Fall 2021 term at JJC.

78.     Plaintiff will be required to re-enroll in those three classes in a future academic term or otherwise make-up those nine (9) credits that he has been denied as a result of Defendants' unjust and unlawful involuntary withdrawal.

79.     Defendants vindictively and unjustly barred Plaintiff even from accessing information and assignments for the three in-person classes in which was enrolled for the Fall 2021 term via its remote, on-line website, known as "CUNY Blackboard."

80.     Upon information and belief, Defendants' professed interest in the maintenance of public health is irrationally directed at students and not at others present on CUNY campuses. Upon information and belief, for the Fall 2021 term, CUNY did not mandate that any of its employees be vaccinated against COVID-19. Thus, while CUNY denied Plaintiff, a fully

enrolled student, access to in-person classes at JJC, it continued to grant full access to its facilities, including JJC's buildings and campus, to employees and faculty who were not vaccinated against COVID-19 and not required to be vaccinated against COVID-19.

81.     Upon information and belief, during the week of October 18-24, 2021, the last full week that Plaintiff was granted access to the JJC campus, CUNY conducted over 200 PCR tests of students enrolled at JJC. Not a single one was positive for COVID-19 infection.

82.     Further, upon information and belief, during the two-month period from August 25 to October 24, 2021, CUNY conducted over 5,100 PCR tests of JJC students. These tests revealed a positive infection rate for COVID-19 among students of just 0.3%.

83.     Thus, as CUNY's own testing regime demonstrates, there was no public health crisis at JJC that has justified Defendants' drastic and unlawful trampling of Plaintiff's rights.

***Defendant's Deny Plaintiff's 2nd Request for an Accommodation***

84.     Registration for classes offered at JJC for the Spring 2022 term began Monday, December 6, 2021.

85.     JJC offered fewer option for on-line or remote classes in the Spring 2022 term than in Fall 2021, thus limiting educational options for enrolled students who are not granted exceptions or exemptions from the Student COVID-19 Vaccination Policy.

86.     Plaintiff registered for JJC's Spring 2022 term and desires to attend certain in-person classes of his choosing, consistent with the course of study and educational goals he has planned and set for himself since enrolling in JJC.

87.     In or around December 2021, Defendant CUNY changed its procedures for evaluating students' requests for religious exceptions under its Student COVID-19 Vaccination Policy. Instead of being evaluated by colleges such as JJC, as Fall 2021 requests had been,

religious exception requests for the Spring 2022 term were evaluated by a central committee called the CUNY Central Office Religious Exceptions Team.

88.     Defendant CUNY has not identified the members of its Central Office Religious Exceptions Team or their qualifications or explained the criteria they utilize in evaluating religious exception requests in any communications to students.

89.     Defendant CUNY further changed it practices in or around December 2021 to provide that all decisions of the Central Office Religious Exceptions Team are final and not subject to appeal by any student.

90.     For the Spring 2022 term, CUNY directed students to submit religious exception requests under the Student COVID-19 Vaccination Policy through the CUNYFirst system.

91.     Students were falsely assured by CUNY on its website that "religious exceptions are evaluated on a case-by-case basis" and that "CUNY is committed to providing exceptions . . . when appropriate."

92.     On or about January 1, 2022, Plaintiff timely submitted to Defendant CUNY a request for a religious exception from the Student COVID-19 Vaccination Policy ("January request").

93.     Plaintiff's January request was submitted through the CUNYFirst system in full conformance with CUNY's published guidelines for making such requests.

94.     In his January request, Plaintiff referred to his initial September request for an accommodation, and he renewed his request for a religious exception from the vaccine mandate. In the January request, Plaintiff also provided additional evidence and support for his sincerely held beliefs regarding the sacredness of innocent human life, their specifically religious

foundation, and his objection to receiving a vaccine produced and/or tested in reliance on cell lines derived from aborted fetuses.

95.     None of the Defendants and no member of CUNY's Central Office Religious Exceptions Team contacted Plaintiff in regard to his January request for a religious exception, sought any additional information from him, inquired as to his religious beliefs, or engaged in any interactive dialogue with Plaintiff regarding the January request.

96.     On or about January 9, 2022, Defendants notified Plaintiff that CUNY had denied his January request for a religious exception from the vaccine mandate. The rejection notice, contained in an electronic message from an unidentified person or persons in CUNY's Office of Student Affairs and Enrollment Management, stated in relevant part:

> After careful review and consideration of your complete submission, the University has determined that such submission lacks a sufficient basis to grant a religious exception to vaccination on the grounds that such submission fails to demonstrate a sufficient attestation of a sincerely held religious belief. . . . The foregoing determination of the University is not subject to appeal.

97.     Contrary to Defendant CUNY's rejection notice, Plaintiff's religious exception request had a sufficient basis to be granted under its policies.

98.     Contrary to Defendant CUNY's rejection notice, Plaintiff's religious exception request indeed demonstrated his sincerely held religious beliefs.

99.     Contrary to Defendant CUNY's rejection notice, Plaintiff's religious exception request demonstrated a sufficient attestation of his sincerely held religious beliefs.

100.    Neither Defendant CUNY's policies nor federal or state law require any particular form or phrasing of an "attestation" of a sincerely held religious belief in order for a student to be entitled to an accommodation.

101.   Defendants' rejection of Plaintiff's January request on the grounds that it "fail[ed] to demonstrate a sufficient attestation of a sincerely held religious belief" was false and pretextual.

102.   Defendants' rejection of Plaintiff's January request was based on Defendants' hostility towards Plaintiff's sincerely held religious beliefs.

103.   Based on his religious objections, Plaintiff did not receive a COVID-19 vaccination or provide any documentation of receipt of a vaccine to Defendants before the start of the Spring 2022 term.

104.   On or about January 31, 2022, Plaintiff's first class of JJC's Spring 2022 term began.

105.   Defendant CUNY has academically withdrawn Plaintiff from in-person courses in which he was enrolled for the Spring 2022 term because of his alleged non-compliance with the Student COVID-19 Vaccination Policy.

106.   Defendants have barred Plaintiff from attending in-person classes at JJC during the Spring 2022 term, asserting that he is not in compliance with the Student COVID-19 Vaccination Policy because they have refused to grant his valid request for an exception.

107.   Plaintiff is a Criminal Justice major and is required to register for and pass certain "Core Courses" to satisfy JJC's requirements for a Bachelor of Arts degree in Criminal Justice. One of those required Core Courses is titled, "Dimensions of Justice (CJBA 120)." Defendant CUNY and its academic advisor specifically recommended to Plaintiff that he register for and take CJBA 120 in the Spring 2022 academic term. However, CJBA 120 is only offered in-person and is not offered on-line or remotely by JJC in the Spring 2022 term.

108.    By their unlawful acts, Defendants have prevented Plaintiff from following the specific recommendations of Defendant CUNY and its academic advisor.

109.    Defendants, by their unlawful acts as alleged herein, have effectively denied Plaintiff the ability to take required Core Courses, which are necessary for his declared major and specifically recommended to be taken in Spring 2022, despite the fact that he is a full-time, enrolled student at JJC.

110.    Defendants' unlawful trampling of Plaintiff's rights as set forth herein has undermined and impeded Plaintiff's academic career, delayed his completion of required college courses, thwarted his studies, prevented him from taking required courses, set back his plans to graduate in May 2024, delayed his intended career in criminal justice, and caused him substantial emotional distress and harm.

111.    Upon information and belief, Defendants' professed "interest in the maintenance of public health" is discriminatorily targeted at those with religious objections to the student vaccine policy.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Free Exercise; United States Constitution, 42 U.S.C. § 1983)

112.    Plaintiff hereby incorporates and repeats the allegations of paragraphs 1 through 111 as if fully restated herein.

113.    By reason of the aforementioned acts, policies, practices and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of his right to the free exercise of his sincerely held religious beliefs in violation of the First Amendment, as applied to the states and his political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

114.    Defendants violated Plaintiff's First Amendment right to freely exercise his religious beliefs by mandating an objectionable medical treatment that substantially interferes with Plaintiff's religious free exercise rights and refusing Plaintiff's reasonable requests for an accommodation therefrom.

115.    Defendant CUNY's policies as applied to Plaintiff violate the First Amendment by punishing a student who exercises his religious beliefs in connection with his personal medical decisions.

116.    Plaintiff's adherence to his sincerely held religious beliefs in declining the available COVID-19 vaccines is a religious exercise.

117.    Defendants' policies and practices are not general laws as they specifically target Christians and others who share Plaintiff's sincerely held religious views, but, upon information and belief, leave untouched students who ascribe to other or no faith traditions.

118.    Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiff's First Amendment right to free exercise of religion.

119.    Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

120.    Defendants' policies and practices create government-imposed, coercive pressure on Plaintiff to change or violate his sincerely held religious beliefs.

121.    Defendants' policies, practices and procedures, punish and impose discipline on Plaintiff for exercising his right to free exercise of his religious beliefs. Defendants' actions injure Plaintiff by chilling his religious activity and religious speech by denying his reasonable requests for accommodations and by discipline and sanction for Plaintiff's alleged failure to comply with its policies.

122.    By these acts alleged, Defendant CUNY has violated and is continuing to violate Plaintiff's right to free exercise of religion under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

123.    By these acts alleged, Defendants Mason, Kerr, Balkissoon, Maxwell, Leal and Jane Does 1-10 (hereinafter, the "Individual Defendants") have violated and are continuing to violate Plaintiff's right to free exercise of religion under the First and Fourteenth Amendments and 42 U.S.C. § 1983, and they have the power to redress these constitutional violations.

124.    As a direct and proximate result of Defendants' constitutional violations, Plaintiff has suffered, is suffering and will continue to suffer irreparable harm, including the denial of educational opportunities that were promised by Defendants and relied upon by Plaintiff and the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for these losses.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Procedural Due Process; United States Constitution. 42 U.S.C. § 1983)

125.    Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 124 above as if fully restated herein.

126.    Defendant CUNY accepted Plaintiff for enrollment at JJC in 2021. As an enrolled student, Plaintiff was permitted to and did register for classes at JJC for the Fall 2021 and Spring 2022 academic terms.

127.    An implied contract was formed between CUNY and Plaintiff when CUNY accepted him for enrollment.

128.    The terms of the implied contract between CUNY and Plaintiff are contained in CUNY's published policies and rules, including the Student COVID-19 Vaccination Policy and the Religious Accommodations Policy.

129.   Implicit in the contract between Plaintiff and CUNY is the requirement that CUNY and the Individual Defendants act in good faith in their dealings with Plaintiff.

130.   Plaintiff has fulfilled all the obligations and requirements of his implied contract with CUNY.

131.   Plaintiff has a liberty or property interest in his dealings with Defendants based upon the implied contract between Plaintiff and CUNY.

132.   By the acts and conduct alleged herein, Defendants deprived Plaintiff of his liberty or property interest without adequate process.

133.   By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to due process under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

134.   By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to due process under the Fourteenth Amendment and 42 U.S.C. § 1983, and they have the power to redress these constitutional violations.

135.   As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer irreparable harm, including the denial of educational opportunities that were promised by Defendants and relied upon by Plaintiff and the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for these losses.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Equal Protection; United States Constitution. 42 U.S.C. § 1983)

136.   Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 135 above as if fully restated herein.

137.    By the acts and conduct alleged herein, including but not limited to denying Plaintiff access to JJC's campus, facilities and classrooms, academically withdrawing him from courses in which he was duly enrolled, failing to provide him with proper notice, and barring him from taking courses recommended and required for his declared major, Defendants have intentionally treated Plaintiff differently from similarly-situated students who do not share Plaintiff's sincerely held religious beliefs.

138.    There is no rational basis for Defendants' different treatment of Plaintiff as compared to similarly-situated students.

139.    By the acts and conduct alleged herein, Defendants intentionally treated Plaintiff differently from similarly-situated students based on their purposeful and intentional discrimination against him based on his religious beliefs.

140.    By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to equal protection under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

141.    By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983, and they have the power to redress these constitutional violations.

142.    As a direct and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will suffer, irreparable harm, including the denial of educational opportunities that were promised by Defendants and relied upon by Plaintiff and the loss of his fundamental constitutional rights, entitling him to declaratory and

injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for these losses.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Free Exercise of Religion, N.Y. State Constitution)

143.    Plaintiff hereby incorporates and repeats the allegations of paragraphs 1 through 142 as if fully restated herein.

144.    Section 3 of the Constitution of the State of New York guarantees that "the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind."

145.    By reason of the aforementioned acts, policies, practices and procedures created, adopted and enforced under color of state law, Defendants deprived Plaintiff of his right to freely exercise his religion in violation of Section 3 of the New York Constitution.

146.    Defendants' policies, practices and procedures punish and impose discipline on Plaintiff for exercising his New York State constitutional rights.

147.    Defendants' actions injure Plaintiff by chilling his constitutionally protected activity through threat of and sanction by Defendants for failure to comply with its policies and refusal to grant his request for accommodation under such policies.

148.    By the acts and conduct alleged herein, Defendant CUNY has violated and is continuing to violate Plaintiff's right to free exercise and enjoyment of religious profession under the New York State Constitution.

149.    By the acts and conduct alleged herein, the Individual Defendants have violated and are continuing to violate Plaintiff's right to free exercise and enjoyment of religious profession under the New York State Constitution, and they have the power to redress these constitutional violations.

150.   As a direct and proximate result of Defendants' violations of the state Constitution, Plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the denial of educational opportunities that were promised by Defendants and relied upon by Plaintiff and the loss of his fundamental constitutional rights, entitling him to declaratory and injunctive relief. Additionally, Plaintiff is entitled to compensatory and punitive damages for these losses.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(New York State Human Rights Law, Exec. Law §§ 296, *et seq*.)**

151.   Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 150 above as if fully restated herein.

152.   Under the New York State Human Rights Law, it is an unlawful discriminatory practice for any employee of any place of  public accommodation to refuse, withhold from or deny to any person any of the accommodations, advantages, services, facilities or privileges thereof, on account of the religion  or creed of such person.

153.   CUNY and its college JJC and their facilities, campuses, courses and classrooms are places of public accommodation as defined by the New York State Human Rights Law.

154.   Under the New York State Human Rights Law, it is an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under such law, or to attempt to do so.

155.   The Individual Defendants, by the acts alleged herein, aided, abetted, incited, compelled and/or coerced violations of Plaintiff's right to the use and enjoyment of CUNY's facilities, accommodations, advantages, services, facilities and/or privileges on account of Plaintiff's  creed or religion.

156.    The Individual Defendants' aiding and abetting of violations of the New York State Human Rights Law was knowing and willful.

157.    As a direct and proximate result of the Individual Defendants' unlawful acts as alleged herein, Plaintiff has been harmed and is entitled to declaratory and injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs from the Individual Defendants.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (New York City Human Rights Law, N.Y.C. Admin. Code, Title 8)

158.    Plaintiff hereby incorporates and repeats the allegations contained in paragraphs 1 through 157 above as if fully restated herein.

159.    Under the New York City Human Rights Law, it is an unlawful discriminatory practice for any employee of any place or provider of public accommodation, because of any person's actual or perceived religion or creed, to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation.

160.    CUNY and its college JJC and their facilities, campuses, courses and classrooms are places of public accommodation as defined by the New York City Human Rights Law.

161.    Under the New York City Human Rights Law, it is an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under such Law, or to attempt to do so.

162.    The Individual Defendants, by the acts alleged herein, aided, abetted, incited, compelled and/or coerced violations of Plaintiff's right to the use and enjoyment of CUNY's facilities, accommodations, advantages, services, facilities and/or privileges on account of Plaintiff's creed or religion.

163.     The Individual Defendants' aiding and abetting of violations of the New York City Human Rights Law was knowing and willful.

164.     As a direct and proximate result of the Individual Defendants' unlawful acts as alleged herein, Plaintiff has been harmed and is entitled to declaratory and injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs from the Individual Defendants.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action against all Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff asks this Honorable Court to grant and allow him:

a)     Prospective injunctive relief against each of the Individual Defendants, enjoining the unconstitutional and unlawful implementation, application and enforcement of Defendants' policies, practices and procedures as set forth in this First Amended Verified Complaint and order the Individual Defendants to redress those constitutional violations, in a preliminary injunction and permanent injunction, restoring the status quo, deeming Plaintiff compliant with CUNY's student vaccination policy, reinstating Plaintiff's full rights to access JJC's campus, facilities, classrooms and to attend in-person classes, and allowing him to continue to pursue his education at JJC without interruption;

b)     A declaration that Defendants violated Plaintiff's clearly established statutory and constitutional rights;

c)     A declaration that the policies, practices and procedures of Defendants as set forth in this First Amended Verified Complaint violate the United States Constitution and the New York State Constitution;

d)     An award of compensatory and punitive damages for Defendants' violations of Plaintiff's rights;

e)     An award of Plaintiff's reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable law;

f)  An award of compensatory and punitive damages, attorneys' fees and costs jointly and severally against the Individual Defendants for aiding and abetting violations of the New York State Human Rights Law and the New York City Human Rights Law; and

g)  Such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
February 11, 2022

/S/ Kevin G. Jenkins
Kevin G. Jenkins
215 Skylands Road
Ringwood, New Jersey 07456
Kevinlocal12@aol.com
201-400-6720
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I, Joseph Collins,  declare under penalty of perjury as follows:

1.      I am the Plaintiff  in the above-captioned  case and a resident of the State of New York.

2.      I have personal knowledge  of the facts and allegations  contained  in the foregoing First Amended Verified Complaint,  and I declare under penalty of perjury that they are true and correct, except as to matters alleged upon information  and belief, and as to those allegations,  I believe  them to be true.

Executed on this  10th day of February, 2022
Brooklyn,  New York

Signed: _____
                        Joseph Collins