UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

JOSEPH COLLINS,

                  Plaintiff,                **MEMORANDUM AND ORDER**

      - against -                21 Civ. 9544 (NRB)

THE CITY UNIVERSITY OF NEW YORK,
KAROL V. MASON, BRIAN A. KERRR,
TONY BALKISSOON, JILL MAXWELL,
GABRIELA LEAL, and JANE DOES 1-10,
Individuals whose names are currently
Unknown to Plaintiff,

                Defendants.

------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Plaintiff Joseph Collins ("Collins" or "plaintiff") initiated this § 1983 lawsuit in 2021 against the City University of New York ("CUNY") and CUNY employees Karol Mason ("Mason"), Brian Kerr ("Kerr"), Tony Balkissoon ("Balkissoon"), Jill Maxwell ("Maxwell"), Gabriela Leal ("Leal"), and Jane Does 1-10 ("Jane Does" and together with Mason, Kerr, Balkissoon, Maxwell, and Leal the "Individual Defendants") (collectively the "defendants"), asserting: free exercise, procedural due process and equal protection claims under the United States Constitution; a free exercise claim under the New York State Constitution; and religious discrimination claims under the New York State and City Human Rights Laws. See Am. Compl. (the "Amended Complaint" or "AC"), ECF No. 11 ¶¶ 18-29, 112-64. Collins

seeks injunctive and declaratory relief, as well as compensatory and punitive damages.  AC ¶ 6, Prayers for Relief.  Before the Court is defendants' motion to dismiss the Amended Complaint in its entirety for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  ECF No. 30.  For the reasons that follow, defendants' motion is granted.

## I.   BACKGROUND[1]

On July 6, 2021, one month before plaintiff enrolled as a full-time student at CUNY's John Jay College of Criminal Justice ("John Jay"), CUNY adopted a COVID-19 vaccination requirement for all students, to become effective upon full FDA approval of a COVID-19 vaccine.  Id. ¶¶ 13, 35, 37; see CUNY Policy 7.061: SARS-CoV-2 (COVID-19) Vaccination Program, https://policy.cuny.edu/general-policy/article-vii/#policy_7.061 (the "Vaccination Policy").  The Vaccination Policy mandated that students registering for in-person or hybrid classes at any CUNY location become vaccinated against COVID-19 before the Fall 2021 term, absent a medical or religious exemption.  AC ¶ 35.  Any student who failed to become vaccinated or obtain an exemption could be prohibited from attending in-person or hybrid classes.  Id. ¶ 40.

---

[1] The following facts are drawn from the Amended Complaint and accepted as true for the purposes of the Court's ruling on defendants' motion to dismiss.  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).  The Court may take judicial notice of publicly available documents and information on official government websites.  Wells Fargo Bank, N.A. v. Wrights Mill LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015).

CUNY also informed students that religious exemptions may be granted "based on a person's sincerely held religious belief, practice, or observance, which includes any traditionally recognized religion as well as beliefs, observances, or practices, which an individual sincerely holds and which occupy in his life a place of importance parallel to that of traditionally recognized religions." Id. ¶ 39. At the time the Vaccination Policy was first issued, those requests were evaluated by authorized John Jay campus representatives. Id. ¶¶ 39, 41.

Plaintiff enrolled at John Jay in August 2021 and began pursuing a four-year Bachelor of Arts degree in Criminal Justice. Id. ¶ 13. He expects to graduate in May 2025. Id.

On August 23, 2021, the FDA approved Pfizer's COVID-19 vaccine, making the Vaccination Policy effective (the "Effective Date"). Id. ¶ 46. Students were thus given 45 days to become fully vaccinated, i.e., until October 7, 2021. Id. ¶¶ 46-47; see COVID-19 Supplemental Policy No. 3 (August 23, 2021), https://www.cuny.edu/ coronavirus/university-updates/administrative-announcements/covid-19-supplemental-policy-no3/#:~:text=3%20provides%20University%20 students%20with,having%20it%20approved%20through%20CUNYfirst. Plaintiff began attending three in-person classes at John Jay on August 25, 2021 -- i.e., two days after the Effective Date. AC ¶¶ 50-51.

On September 1, 2021, plaintiff submitted a request for a religious exemption from the Vaccination Policy based on his

assertion that COVID-19 vaccines were produced and/or tested on human cell lines derived from aborted fetuses, and obtaining a COVID-19 vaccine would therefore conflict with his beliefs as a Christian. Id. ¶¶ 56-57 (the "First Request").[2]  On September 7, 2021, plaintiff was informed that the First Request had been reviewed and denied by John Jay's College Counsel "in consultation with CUNY's office of General [Counsel]" "to ensure compliance with the law and policy while ensuring CUNY's interest in the maintenance of public health." Id. ¶ 59.

On September 8, 2021, plaintiff's father (on behalf of then-minor Collins) emailed defendant Gabriela Leal -- John Jay's Director of Compliance and Diversity -- requesting specific reasons why plaintiff's exemption was denied and an opportunity to appeal the denial.   Id. ¶ 63.   Leal replied later that day, stating that "[r]equests for religious accommodations are reviewed by the Executive Counsel's office.   Executive Counsel Tony Balkissoon and Deputy Counsel Jill Maxwell, copied here, will be able to assist you."  Id. ¶ 64.  Balkissoon replied on September 13, 2021, advising plaintiff that John Jay's religious exemption process "does not include the right to appeal, nor does it include the provision of specific reasons for denials," which he repeated in subsequent email correspondence with plaintiff's father.  Id. ¶¶ 65, 69.

---

[2] Plaintiff's request was co-signed by his father, because plaintiff was a minor at the time.  Id. ¶ 58.

Plaintiff did not receive a COVID-19 vaccine by the October 7, 2021 deadline yet continued attending his three in-person classes until October 27, 2021.  Id. ¶¶ 71-72.  On October 28, 2021, John Jay withdrew Collins from his in-person classes, and he was barred from campus.  Id. ¶ 74.

On December 6, 2021, CUNY began registration for its Spring 2022 semester, and Collins again enrolled in multiple in-person classes.  Id. ¶¶ 84, 86.  Although the Vaccination Policy remained in place for the Spring 2022 semester, CUNY informed students in December 2021 that a central CUNY committee -- the CUNY Central Office Religious Exceptions Team -- would oversee the exemption process, rather than officials at John Jay.  Id. ¶ 87; see Student Vaccination Mandate FAQ, https://www.cuny.edu/coronavirus/faqs/ ("Vaccination Policy FAQs").  Students were further told that all exemption decisions made by the Central Office Religious Exceptions Team were final and not subject to appeal, though individuals could reapply if new information became available.  Id. ¶ 89; see Vaccine Policy FAQs.

On January 1, 2022, plaintiff submitted another request for a religious exemption on the same grounds as his First Request.  Id. ¶¶ 92-94 (the "Second Request").  On January 9, 2022, plaintiff was notified by CUNY's Office of Student Affairs and Enrollment Management that the Second Request was denied because it "lack[ed] a sufficient basis" and "fail[ed] to demonstrate a sufficient attestation of a sincerely held religious belief."  Id. ¶ 96.

Because plaintiff did not receive a COVID-19 vaccination by the start of the Spring 2022 term, id. ¶¶ 103-04, he was again administratively withdrawn from his in-person classes and barred from attending in-person classes at John Jay.  Id. ¶¶ 105-06.  At least one "Core Course" necessary for Collins to complete his degree in Criminal Justice was only offered in-person during the Spring 2022 term, which has allegedly delayed plaintiff's graduation date. Id. ¶¶ 107, 110.  The Vaccination Policy remained in effect during CUNY's Fall 2022 semester, John Jay College –- Fall 2022 COVID-19 Plan,  https://www.jjay.cuny.edu/sites/default/files/President/Fall_2022_COVID-19_Plan.pdf, and currently remains in effect during the Spring 2023 semester.  See Student Vax Info – Spring 2023, CUNY, https://www.cuny.edu/coronavirus/#2023.

Plaintiff filed suit on November 17, 2021, ECF No. 1, along with a motion to proceed pseudonymously, ECF No. 3, which this Court denied on December 1, 2021, ECF No. 6.  Collins did not appeal that decision.

On February 14, 2022, plaintiff filed the Amended Complaint, specifically seeking (1) injunctive relief, including prospectively enjoining the Individual Defendants from their "implementation, application and enforcement" of the Vaccination Policy and reinstating plaintiff's full rights to access John Jay's campus and attend in-person classes; (2) declaratory relief stating that defendants violated plaintiff's statutory and constitutional rights, and the Vaccination Policy violated the United States and New York

Constitutions; and (3) awards of compensatory damages, punitive damages, and litigation costs. ECF No. 11. Defendants filed the instant motion to dismiss and a memorandum in support under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on June 29, 2022, ECF Nos. 30-32 ("Def. Br."); plaintiff opposed on July 23, 2022, ECF No. 38 ("Pl. Opp."); and defendants submitted their reply on August 4, 2022, ECF No. 39 ("Def. Reply").

## II.  <u>LEGAL STANDARD</u>

Defendants move to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. <u>See</u> Fed. R. Civ. P. 12(b)(1), (6). "When presented with motions to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), 'the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.'" <u>Khodeir v. Sayyed</u>, No. 15-cv-8763 (DAB), 2016 WL 5817003, at *3 (S.D.N.Y. Sept. 28, 2016) (quoting <u>S.E.C. v. Rorech</u>, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009)); <u>see also</u> <u>Town of West Hartford v. Operation Rescue</u>, 915 F.2d 92, 99 (2d Cir. 1990) ("The question of subject matter jurisdiction must be confronted at the threshold of the case.").

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>accord</u> <u>Ford v. D.C.</u>

37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009).  In considering a 12(b)(1) motion, the Court "must accept as true all material factual allegations in the complaint," but it does not draw all reasonable inferences in the plaintiff's favor.  J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004).  "Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists."  Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 499 (S.D.N.Y. 2016) (citing APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)).  When subject matter jurisdiction is challenged, the plaintiff bears the burden of establishing a factual basis for jurisdiction.  See Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

## B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is considered plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "[T]he [C]ourt is to accept as true all facts alleged

in the complaint," and unlike a 12(b)(1) motion, it must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

### III.   DISCUSSION

#### A. Rule (12)(b)(1) - Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  It is well-settled that the Eleventh Amendment bars suits against states and their agencies in federal court, unless Congress abrogates the state's immunity or the state has waived its immunity. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984); see also Hans v. Louisiana, 134 U.S. 1, 10-11 (1890) (Eleventh Amendment applicable to suits outside its express terms, including suits by a state's own citizens).

Here, the Eleventh Amendment clearly applies to all claims against CUNY and the Individual Defendants to the extent they are sued in their official capacities.  Although CUNY is not a state agency, it is nonetheless an "arm of the state" and therefore entitled to sovereign immunity. See Clissuras v. City Univ. of N.Y., 359 F.3d 79, 83 (2d Cir. 2004); Bryan v. City Univ. of N.Y., 20-cv-1627 (CM), 2020 WL 1434708, at *2 (S.D.N.Y. 2020) (finding "John Jay College is one of CUNY's senior colleges, and is therefore an arm of

the state" for Eleventh Amendment purposes).  Likewise, sovereign immunity extends to claims against state officials for acts committed in their official capacities.  Darcy v. Lippman, 356 F. App'x 434, No. 436-37 (2d Cir. 2009).  Congress also did not abrogate the states' immunity in enacting 42 U.S.C. § 1983, nor has New York consented to § 1983 suits in federal court.  See Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (citing Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977), Quern v. Jordan, 440 U.S. 332, 340-42 (1979)).  Furthermore, New York has not consented to suit under the State or City Human Rights Law or New York's State Constitution.  See Purdie v. City Univ. of New York, No. 13-cv-6423 (NRB), 2015 WL 129552, at *4 (S.D.N.Y. Jan. 8, 2015); see also Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) (City Human Rights Law); Cassells v. Univ. Hosp. at Stony Brook, 740 F. Supp. 143, 147-48 (E.D.N.Y. 1990) (State Human Rights Law); Maione v. Zucker, No. 18-cv-7452 (KMK), 2022 WL 784483, at *6 (S.D.N.Y. Mar. 15, 2022) (New York State Constitution).

Plaintiff nonetheless contends that an exception applies to his official capacity claims against the Individual Defendants under Ex parte Young, 209 U.S. 123 (1908), pursuant to which "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law."  State Empls. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (internal quotation marks omitted); see Pl. Opp. at 17-19.  "In determining whether the

10

doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) (internal quotations omitted).   In addition, the Ex parte Young exception is applicable "only if the officials he sues have 'the authority to provide the requested relief.'" Ross v. State of New York, No. 15-cv-3286 (JPO), 2016 WL 626561, at *4 (S.D.N.Y. Feb. 16, 2016) (quoting Siani v. State Univ. of N.Y. at Farmingdale, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014)).

As an initial matter, because the Ex parte Young doctrine only applies to suits against state officials in which a plaintiff seeks prospective, injunctive relief from violations of federal law, it cannot save plaintiff's state and local law claims, his damages and declaratory relief claims, and his claims against CUNY. Rowland, 494 F.3d at 95.   Plaintiff also cannot show that any of the five named Individual Defendants (Mason, Kerr, Balkissoon, Maxwell, and Leal) has the authority to reinstate his campus access.   As Collins alleges in the Amended Complaint, religious exemption requests are no longer evaluated by any of the five named Individual Defendants, but rather by a central CUNY committee. See AC ¶ 87. Ex parte Young therefore does not apply to defendants Mason, Kerr, Balkissoon, Maxwell, and Leal.

However, plaintiff meets both prongs of the <u>Ex parte Young</u> test with respect to the Jane Does who are members of the CUNY Central Office Religious Exceptions Team.  He satisfies the first prong by alleging ongoing free exercise, procedural due process, and equal protection claims under § 1983.  <u>See</u> AC ¶¶ 112-42.  We note here that a mere "<u>allegation</u> of an ongoing violation of federal law . . . is ordinarily sufficient" to invoke the doctrine, and our "inquiry into whether suit lies under <u>Ex parte Young</u> does not include an analysis of the merits of the claim." <u>Verizon Maryland</u>, 535 U.S. at 646 (quoting <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 281 (1997)).  Our <u>Ex Parte Young</u> analysis is therefore consistent with our determination, <u>infra</u>, that plaintiff's constitutional claims are meritless.

Plaintiff also meets the second prong because he seeks prospective injunctive relief from the Jane Does: <u>i.e.</u>, reinstating plaintiff's full campus access.  <u>See</u> AC ¶ 29, Prayers for Relief.  Thus, insofar as he seeks reinstatement, plaintiff's official capacity claims against the Jane Does who are members of the CUNY Central Office Religious Exceptions Team will not be dismissed on Eleventh Amendment grounds at this stage.  <u>See</u> <u>Russell v. Dunston</u>, 896 F.2d 664, 668 (2d Cir. 1990) (holding that reinstatement to medical leave is considered prospective relief for purposes of <u>Ex Parte Young</u>); <u>Marino v. City Univ. of New York</u>, 18 F.

Supp. 3d 320, 334 (E.D.N.Y. 2014) (reinstatement to Hunter College constituted prospective relief).[3]

Accordingly, all of plaintiff's claims against CUNY, as well as the majority of his official capacity claims against the Individual Defendants, are barred by the Eleventh Amendment and dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  The Court now considers defendants' arguments for dismissal under Rule 12(b)(6).[4]

### B. Rule 12(b)(6) – Personal Involvement

We first address defendants' argument that plaintiff has not properly alleged personal involvement with respect to the Individual Defendants.  Under § 1983, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." Warren v. Pataki, 823 F.3d 125, 136 (2d Cir. 2016) (quoting Patterson v. Cty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004)).  Defendants argue that plaintiff fails to allege the personal involvement of any of the Individual Defendants in connection with the Second Request and

---

[3] Plaintiff defines the Jane Does as including, but not limited to, persons who are members of the CUNY Central Office Religious Exceptions Team.  AC ¶ 29.  The Court does not apply the Ex Parte Young exception to any Jane Does who are not members of the CUNY Central Religious Exceptions Team, because plaintiff does not allege in the Amended Complaint that non-member Jane Does could reinstate him.

[4] For the sake of completion, we briefly note as an initial matter that plaintiff's remaining § 1983 official capacity, injunctive relief claim against the Jane Does is not subject to dismissal under Rule 12(b)(6) on the theory that those defendants are not "persons."  See Def. Br. at 9 n.3.  As the Supreme Court has stated, a "state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'"  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985)).

the personal involvement of defendants Mason, Kerr, Maxwell, and Leal in connection with the First Request.  Def. Br. at 10-13.

We begin with the Second Request.  Collins has not alleged -- and cannot allege -- that defendants Mason, Kerr, Balkissoon, Maxwell, and Leal were personally involved in denying the Second Request.  Rather, as plaintiff avers in the Amended Complaint, that request was handled by the CUNY Central Office Religious Exceptions Team, which began evaluating students' religious exemption requests in December 2021.  See AC ¶¶ 87-90, 92.  Plaintiff's § 1983 claims based on the Second Request are therefore dismissed against defendants Mason, Kerr, Balkissoon, Maxwell, and Leal for lack of personal involvement.  See D'Angelo v. Annucci, No. 16-cv-6459, 2017 WL 6514692, at *5 (S.D.N.Y. Dec. 19, 2017) (dismissing claim for lack of personal involvement where "[p]laintiff has not alleged any way in which [the] [d]efendants were personally responsible for, or involved in the circumstances that resulted in [the] [p]laintiffs' alleged harms").

However, assuming that there was merit to plaintiff's substantive allegations, he has alleged sufficient personal involvement with respect to the role the specific, individual Jane Doe members of CUNY's Central Office Religious Exceptions Team played in denying the Second Request.  Plaintiff asserts in the Amended Complaint that Spring 2022 religious exemption requests were evaluated by the CUNY Central Office Religious Exceptions Team, AC ¶ 87 -- composed of Jane Does, id. ¶ 29 -- which denied the Second

14

Request.  Id. ¶ 96.  That is sufficient at this stage to allege personal involvement.  See Escoffier v. City of New York, No. 13-cv-3918 (JPO), 2016 WL 590229, at *5 (S.D.N.Y. Feb. 11, 2016).

With respect to the First Request, the Court begins with defendants Karol Mason, the President of John Jay, and Brian Kerr, John Jay's Vice President for Enrollment Management and Student Affairs.  Plaintiff alleges that, "[u]pon information and belief," Mason and Kerr have "responsibility for implementing and enforcing the policies at issue in this case, evaluating [John Jay] students' requests for religious accommodations, and making determinations regarding such requests," AC ¶¶ 19, 21, and they "violated, [are] violating and/or aided and abetted others in violations of Plaintiff's constitutional and statutory rights in [their] implementation and enforcement of these policies."  AC ¶¶ 20, 22. Without more, such vague, conclusory allegations do not satisfy the personal involvement standard.  See Medina v. Kaplan, No. 16-cv-7223, 2018 WL 797330, at *6 (S.D.N.Y. 2018) ("[A] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal.") (quoting Davis v. County of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005)); accord Maione, 2022 WL 784483, at *8.  In addition, defendants such as Mason and Kerr may not be held liable for constitutional violations in a § 1983 action merely because they

hold a high position of authority.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).  All individual capacity claims § 1983 claims against defendants Mason and Kerr are therefore dismissed.

For similar reasons, the Court agrees with defendants that Collins does not properly allege the personal involvement of defendants Gabriela Leal, Interim Director of Compliance and Diversity at John Jay, and Jill Maxwell, Deputy Counsel at John Jay. Regarding Leal, Plaintiff makes the same inadequate and conclusory allegations against Leal that he asserts against Mason and Kerr, AC ¶¶ 27-28, but adds that plaintiff's father emailed Leal for an explanation of why the First Request was denied, to which she merely responded that "[r]equests for religious accommodations are reviewed by the Executive Counsel's office" and referred plaintiff to defendants Balkissoon and Maxwell.  Id. ¶¶ 63-64.  That additional referral is not enough to establish personal involvement, because there is no indication that Leal participated in the implementation of either the Vaccination Policy generally or the denial of the First Request specifically.  Likewise, plaintiff does not demonstrate that defendant Maxwell was personally involved with denying the First Request because she was copied on a few emails between plaintiff's father and defendant Balkissoon.  Participation in an email chain, without more, is insufficient to satisfy personal involvement.  See Cent. UTA of Monsey v. Vill. of Airmont, New York, No. 18-cv-11103 (VB), 2020 WL 377706, at *23 (S.D.N.Y. Jan. 23, 2020).  Plaintiff's

individual capacity § 1983 claims are thus also dismissed against defendants Leal and Maxwell.

Plaintiff has, however, sufficiently alleged that defendant Tony Balkissoon, Vice President and Executive Counsel at John Jay, was personally involved in denying the First Request.  Indeed, defendants do not contest Balkissoon's personal involvement in denying the First Request.  <u>See</u> Def. Br. at 11, 13.

To recap, the claims which remain are: (1) a claim for injunctive relief under § 1983 against the Jane Does in their official capacities; (2) § 1983 claims against defendants Balkissoon and the Jane Does in their individual capacities; and (3) state and local law claims.  The Court now turns to the merits of plaintiff's Free Exercise, Equal Protection, and Procedural Due Process constitutional claims, which we hold are foreclosed by controlling Second Circuit precedent.[5]

### C. Rule 12(b)(6) – § 1983 Free Exercise Challenge

The First Amendment's Free Exercise Clause provides that "Congress shall make no law respecting an establishment of religion,

---

[5] At the outset, we reject Collins's argument that any conflicts between CUNY's Reasonable Accommodations and Academic Adjustments Policy (the "Religious Accommodations Policy") and the Vaccination Policy are relevant to his constitutional claims.  AC ¶¶ 30, 34; <u>see</u> Religious Accommodations, https://www.cuny.edu/about/administration/offices/legal-affairs/policies-re sources/reasonable-accommodations-and-academic-adjustments/vi-religious-accomm odations/ (the "Religious Accommodations Policy").  Plaintiff may not rely on this argument, because alleged failures by a City office to follow separate or self-imposed policies do not give rise to a § 1983 claim.  <u>Collins v. Putt</u>, 979 F.3d 128, 136 (2d Cir. 2020) (plaintiff "had no constitutionally protected liberty or property interest in the Defendants' adherence to their own code of conduct"); <u>see also</u> <u>Swinson v. City of New York</u>, 20-cv-0994 (CM), 2020 WL 1435971, at *2 (S.D.N.Y. Mar. 23, 2020) ("[A]llegations that City officials are failing to comply with City law or DOC policies do not give rise to a federal constitutional claim.").

or prohibiting the free exercise thereof . . . ."  U.S. Const., amend. I; see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states).  "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 877 (1990).  "The Free Exercise Clause thus protects an individual's private right to religious belief, as well as 'the performance of (or abstention from) physical acts that constitute the free exercise of religion.'"  Kane v. De Blasio, 19 F.4th 152, 163-64 (2d Cir. 2021) (quoting Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene, 763 F.3d 183, 193 (2d Cir. 2014)).  "In order to prevail on a Free Exercise Clause claim, a plaintiff generally must establish that 'the object of [the challenged] law is to infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'"  Okwedy v. Molinari, 69 F. App'x. 482, 484 (2d Cir. 2003) (alterations in original) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)).

Importantly, the protections granted under the Free Exercise clause "do[] not relieve an individual of the obligation to comply with a valid and neutral law of general applicability."  Smith, 494 U.S. at 879 (internal quotation marks omitted).  "Where the government seeks to enforce a law that is neutral and of general

applicability . . . it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." <u>Fifth Ave. Presbyterian Church v. City of New York</u>, 293 F.3d 570, 574 (2d Cir. 2002); <u>see</u> <u>Cent. Rabbinical Cong.</u>, 763 F.3d at 193 ("[T]he Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).") (internal quotation marks omitted).

However, if laws and government policies are either non-neutral or not generally applicable, they are subject to "strict scrutiny" analysis, meaning that they must be narrowly tailored to serve a compelling state interest. <u>Roman Cath. Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63, 67 (2020); <u>see</u> <u>Fulton v. City of Philadelphia</u>, 141 S. Ct. 1868, 1881 (2021) ("A government policy can survive strict scrutiny only if it advances interests of the highest order and is narrowly tailored to achieve those interests.") (internal quotation marks omitted).

As established by recent Second Circuit case law, the Vaccination Policy is neutral, generally applicable, and easily passes rational basis review.

### i. _Neutrality_

The Vaccination Policy challenged here is neutral, because it meets "the minimum requirement of neutrality [] that a law not discriminate on its face," <u>Church of the Lukumi Babalu</u>, 508 U.S. at

533, and does not "target[] religious conduct for distinctive treatment." Id. at 533-34.[6]  The Second Circuit's opinion in Kane v. De Blasio is controlling.  19 F.4th 152.  In that case, plaintiff teachers and school administrators brought a Free Exercise challenge against a New York Department of Education policy mandating that individuals who work in New York City schools be vaccinated against COVID-19.  Id. at 158.  The Court of Appeals unequivocally held that the vaccination mandate there was facially neutral, because it applied to "all [Department of Education]" staff and "d[id] not single out employees who decline vaccination on religious grounds." Id. at 164.  As in Kane, the Vaccination Policy here broadly applies to "all [CUNY] [s]tudents attending fully in-person or hybrid courses" on its face, see the Vaccination Policy, and thus refuses to "single out" students who refuse to become vaccinated on religious grounds.  19 F.4th at 164.

Moreover, the Vaccination Policy permits exemptions for students who put forth sincerely held religious beliefs, which the Second Circuit has unequivocally held "goes beyond what the Constitution requires." Phillips v. City of New York, 775 F.3d 538, 543 (2d Cir. 2015).  And contrary to plaintiff's contentions, neither CUNY's inclusion of a religious exemption nor the denial of an

---

[6] In evaluating neutrality, courts should consider any "subtle departures" from religious neutrality, as well as "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." Id. at 534, 540; accord Kane, 19 F.4th at 164.

exemption request obviates the Vaccination Policy's neutrality. Such an interpretation would, as another district court aptly notes, "create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny." Ferrelli v. Unified Ct. Sys., No. 22-cv-0068 (LEK) (CFH), 2022 WL 673863, at *8 (N.D.N.Y. Mar. 7, 2022). Rather, plaintiff must show animus by defendants to "render the [Vaccination Policy] non-neutral." Kane, 19 F.4th at 165. Plaintiff points to no such animus. The Vaccination Policy's express "purpose . . . is to protect the health and safety of [CUNY] community," see the Vaccination Policy, and there is no basis for plaintiff's conclusory assertion to the contrary that defendants "specifically target Christians and others who share Plaintiff's sincerely held religious views." AC ¶ 117. In addition, there is no animus where, as here, the vaccination mandate at issue "is designed to further the compelling objective of permitting schools fully to reopen." Kane, 19 F.4th at 172; see also Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33, 39 (E.D.N.Y. 2021) ("[E]ven if plaintiffs disagree with it, the [vaccination mandate] at issue represents a rational policy decision surrounding how best to protect children during a global pandemic."), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), cert. denied, 142 S. Ct. 1668 (2022); Broecker v. New York City Dep't of Educ., 573 F. Supp. 3d 878, 891 (E.D.N.Y. 2021) (vaccination mandate served an "obvious, significant

governmental interest in preventing transmission of the COVID-19 virus and protecting students").

ii. *General Applicability*

Plaintiff's attack on the Vaccination Policy's general applicability fares no better. A law is not considered to be generally applicable if: (1) "it invite[s] the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions"; or (2) "it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." Fulton, 141 S. Ct. at 1877. The Second Circuit has held that the "mere existence of an exemption procedure, . . . is not enough to render a law not generally applicable and subject to strict scrutiny." We The Patriots USA, Inc. v. Hochul, 17 F.4th 266, 288-89 (2d Cir. Nov. 4, 2021) (quoting Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 276 (3d Cir. 2007)). Rather, as noted in We The Patriots and Kane, there must be some showing that the exemption procedures allow secularly motivated conduct to be favored over religiously motivated conduct. We The Patriots, 17 F.4th at 288-89; Kane, 19 F.4th at 165-66. Here, as in Kane, the Vaccination Policy does not favor any secular activity over a religious one; indeed, plaintiff makes no allegation that defendants have favored secular medical exemption requests over religious exemption requests. See Kane, 19 F.4th at 166.

### iii. *Rational Basis*

Because the Vaccination Policy is neutral and generally applicable, it is subject to rational basis review, which "requires [CUNY] to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal." Kane, 19 F.4th at 166. That standard is easily met here: COVID-19 has killed over one million Americans, and vaccination mandates are rationally related to curbing its spread and allowing students to continue learning in person safely. See, e.g., We The Patriots, 17 F.4th at 290; Kane, 19 F.4th at 166; see also Phillips, 775 F.3d at 543 (evaluating requirement that children be vaccinated for chicken pox to attend school under rational basis and finding that the requirement does not violate the Free Exercise Clause).

The Second Circuit was clear in Phillips that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause," id., and in Kane that New York Department of Education's COVID-19 vaccination mandate for educators and staff did not violate the Free Exercise Clause.  17 F.4th at 166-67.  Those cases are controlling in this context.[7]

---

[7] We briefly note that this action is distinguishable from the Second Circuit's additional holding in Kane that the vaccination mandate there was constitutionally objectionable as applied plaintiffs' applications for religious exemptions.  Id. at 167-69.  Here, unlike in Kane, the sincerity of Collins's religious beliefs was not evaluated against "someone else's publicly expressed religious views," id. at 168, nor does Collins allege that CUNY sometimes "strictly adhered" to its evaluation policies and at "[o]ther times . . . apparently ignored them."  Id. at 169.

### D. Rule 12(b)(6) – § 1983 Equal Protection Challenge

Plaintiff's Equal Protection challenge is also unavailing. Crucially, the Second Circuit has held that where, as here, "a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." Kane, 19 F.4th at 167 n.14 (quoting Does 1-6 v. Mills, 16 F.4th 20, 35 (1st Cir. 2021), cert. denied sub nom. Does 1-3 v. Mills, 142 S. Ct. 1112 (2022)). Applying rational basis review, plaintiff's Equal Protection claim fails, as did his Free Exercise claim.

In any event, plaintiff cannot establish, as he must, that (1) "compared with others similarly situated, [he was] selectively treated," and (2) "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 692 (S.D.N.Y. 2011) (quoting Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995)). Collins points to no similarly situated students who have been treated differently. See Gagliardi v. Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994) ("[I]t is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently."). And plaintiff's contention that "there is no rational explanation" for CUNY refusing to grant his exemption request "[o]ther than purposeful religious discrimination," Pl. Opp. at 24, is conclusory at best. See 30 Clinton Place Owners Inc. v. City of New Rochelle, No. 13-cv-3793, 2014 WL 890482, at *2 (S.D.N.Y.

Feb. 27, 2014) (granting 12(b)(6) motion to dismiss a § 1983 equal protection claim because the complaint failed to allege facts giving rise to inference of discrimination).   Plaintiff's failure to identify any similarly situated students who were treated differently therefore provides another basis for dismissal.

### E. Rule 12(b)(6) - § 1983 Procedural Due Process Challenge

Plaintiff has likewise failed to state a procedural due process claim.   The Fourteenth Amendment's Due Process Clause instructs that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"   U.S. Const. amend. XIV.   "Federal courts examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."   Francis v. Fiacco, 942 F.3d 126, 141 (2d Cir. 2019) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)) (internal quotation marks omitted).   Plaintiff's claim must be dismissed, because the Vaccination Policy is legislative in nature, and Collins has neither plausibly alleged a protected interest nor any deprivation thereof.

First, Collins's claim fails because "it is black letter law that a person is not entitled to procedural due process protections against government action that is legislative in nature."   Hopkins Hawley LLC v. Cuomo, 518 F. Supp. 3d 705, 714 (S.D.N.Y. 2021) (citing Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S.

441, 445 (1915)); accord Donohue v. Hochul, No. 21-cv-8463 (JPO),
2022 WL 673636, at *8 (S.D.N.Y. Mar. 7, 2022).  A government action
is legislative if it has "general application" and "applies
prospectively."  Hopkins Hawley LLC, 518 F. Supp. 3d at 714
(citing Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 143
(2d Cir. 1994)).   The Vaccination Policy satisfies both
requirements: all John Jay students are required to comply, and it
applies prospectively to upcoming semesters.  See the Vaccination
Policy; Hopkins Hawley LLC, 518 F. Supp. 3d at 714 (executive orders
increasing COVID-19 restrictions on dining across New York State
were legislative); Donohue, 2022 WL 673636, at *8-9 (New York
Department of Health regulations requiring mask mandates in schools
were legislative).

    Second, even assuming that the Vaccination Policy is not
legislative in nature, plaintiff does not allege a protectable
property interest.  He argues that the liberty/property interest
implicated by his claim is the "implied contract" he maintains with
CUNY as a student.  Pl. Opp. at 22.  New York does generally recognize
an "implied contract" "between [a college or university] and its
students," which requires the "academic institution [to] act in good
faith in its dealing with its students."  Branum v. Clark, 927 F.2d
698, 705 (2d Cir. 1991) (quoting Olsson v. Bd. of Higher Educ., 49
N.Y.2d 408, 414 (N.Y. 1980)); accord Doherty v. Bice, No. 18-cv-
10898 (NSR), 2020 WL 5548790, at *4 (S.D.N.Y. Sept. 16, 2020).
However, there is no "property interest in any particular type of

education program," <u>Bryant v. New York State Educ. Dep't</u>, 692 F.3d 202, 218 (2d Cir. 2012), only "an interest in not being excluded from the entire educational process." <u>Donohue</u>, 2022 WL 673636, at *9 (citing <u>Mazevski v. Horseheads Cent. Sch. Dist.</u>, 950 F. Supp. 69, 72 (W.D.N.Y. 1997)) (internal quotation marks omitted).  Collins -- who is attending classes remotely, AC ¶¶ 85, 109 -- cannot seriously claim that being barred from certain in-person classes constitutes an "exclu[sion] from the entire educational process." <u>Donohue</u>, 2022 WL 673636, at *9.

   <u>Third</u>, even further assuming that plaintiff alleges a property interest, he cannot show a constitutional deprivation.  As mentioned above, Collins has not been expelled from John Jay, but rather must attend his classes online as a consequence of his decision to not become vaccinated.  See <u>Harris v. Univ. of Massachusetts, Lowell</u>, 557 F. Supp. 3d 304, 312 (D. Mass. 2021), <u>appeal dismissed</u>, 43 F.4th 187 (1st Cir. 2022) ("Although online classes may not provide the student experience that an on-campus presence would (i.e., dorm life, participation in extracurricular activities, including athletics), this does not amount to the deprivation of a UMass education that Plaintiffs allege.").  Indeed, plaintiff cites no case law for the propositions that a delay in the completion of his degree and his alleged emotional harm, Pl. Opp. at 23, are valid constitutional deprivations.  Of course, if Collins feels sufficiently aggrieved by CUNY's Vaccination Policy, he can withdraw from John Jay at any time and continue his studies elsewhere.  <u>Klaassen v. Trustees of Indiana</u>

27

Univ., 7 F.4th 592, 593 (7th Cir. 2021) ("People who do not want to be vaccinated may go elsewhere.  Many universities require vaccination against SARS-CoV-2, but many others do not.  Plaintiff[] ha[s] ample educational opportunities.").[8]

Given our above conclusions on the lack of substantive merit, we need not decide whether "the procedures attendant upon [Collins] were constitutionally sufficient." Fiacco, 942 F.3d at 141. However, the Court notes that plaintiff's argument that he received "no notice" of withdrawal from his in-person classes, Pl. Opp. at 23, is clearly untrue and belied by his own allegations.  In this regard, it bears repeating that plaintiff enrolled in, began attending, and continued to attend in-person classes at John Jay: (1) after CUNY announced its student vaccination policy the month before plaintiff enrolled; (2) after CUNY informed all students that they "may be prohibited from attending fully in-person or hybrid courses" if they failed to comply with the Vaccination Policy; (3) after the Effective Date passed; and (4) after the deadline to become vaccinated passed after a 45-day grace period.  AC ¶¶ 35, 40, 46, 48.  CUNY was unambiguous, transparent, and direct in giving students more-than-sufficient notice of the potential consequences they faced for refusing to become vaccinated. See Harris, 557 F. Supp. 3d at 312 (plaintiff-student was "not entitled to [process] above and

---

[8] The Court also understands that John Jay students can even apply for permission to take classes at other CUNY colleges or non-CUNY colleges, and plaintiff may be able to explore online offerings at another school to satisfy any graduation requirements for his preferred major.  Taking Courses at Other Colleges, John Jay Permit Guidelines, https://jstop.jjay.cuny.edu/forms/jjay_permitguidelines.pdf.

beyond the notice provided by the enactment and publication of the Vaccine Policy itself") (internal quotation marks omitted).

Accordingly, plaintiff's procedural due process claim is unavailing and must be dismissed.[9]

### F. State and Local Law Claims

Because there are no remaining federal claims, we decline to exercise supplemental jurisdiction over plaintiff's state and local law claims.  Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); Kane v. de Blasio, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *14 (S.D.N.Y. Aug. 26, 2022).

---

[9]  The Court will refrain from evaluating defendant's assertion that plaintiff's claim fails because he could have taken advantage of an adequate post-deprivation remedy in the form of an Article 78 proceeding.  See Def. Br. at 20-21.  Although Collins entirely ignores this argument in his opposition, we decline to "foray further into this legal thicket absent some real need to address the question." Locurto v. Safir, 264 F.3d 154, 173 (2d Cir. 2001).

### G. Qualified Immunity

Since the Court has dismissed plaintiff's claims on other grounds, we need not -- and therefore will not -- address whether the Individual Defendants are entitled to qualified immunity.

### IV.   CONCLUSION

For the foregoing reasons, the Court dismisses the Amended Complaint in its entirety with prejudice.   The Clerk of Court is respectfully directed to terminate the open motion (ECF No. 30) and close this case.

**SO ORDERED.**

DATED:   New York, New York
         February 8, 2023

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

30